# Baldwin *et al. v.* Hatchett, adm'r, &c.

*Bill in Equity by Administrator de bonis non, against Administrator in chief and Purchaser, charging Devastavit.*

1. *Administrator's power over choses in action.*—An administrator is charged with the duty of collecting the *choses in action* of the intestate, and has absolute power to dispose of them: he may sell, assign, transfer, release, compound, or discharge them; and such transactions can only be avoided by legatees, distributees, or creditors, when fraud or collusion is shown—when those dealing with him participate in a *devastavit*, which, within their knowledge, he is either committing or contemplating.

2. *Administrator's power over mortgage.*—A mortgage is, in equity, but a security for a debt; and though the legal title to the mortgaged lands, on the death of the mortgagee, descends to his heirs, they hold it in trust for the administrator, as an incident to the debt; and he, acting in good faith, may release it, or transfer it by an assignment of the debt.

3. *Same; devastavit by administrator.*—If an administrator, acting in good faith, with no intention to defraud the estate, or to reap a personal benefit to himself, releases a mortgage on land, at the earnest solicitation of the mortgagor and a person desiring to purchase from him; retaining a mortgage on personal property of value equal to the secured debt, and accepting a new mortgage on other lands, which, though of less value, afforded ample security at that time; he cannot be charged with a *devastavit*, on account of the difference in the value of the lands, nor on account of the eventual partial loss of the debt, caused by the subsequent destruction of the personal property, and the deterioration in the value of the land; nor can the mortgagor or purchaser be charged in equity with the loss, on account of their participation in the transaction.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. H. AUSTILL.

The bill in this cause was filed on the 20th March, 1876, by W. T. Hatchett, as the administrator *de bonis non* of the estate of Samuel H. Cochran, deceased, against William O. Baldwin, Willis R. Calloway, and Jason G. Jones; and alleged the following facts: On the 28th April, 1859, said Cochran sold and conveyed to said Willis R. Calloway a large plantation in Montgomery county, together with about thirty-

five slaves, and all the mules and horses on the place, at the aggregate price of $60,000; and to secure the payment of a part of the purchase-money, said Calloway executed and delivered to Cochran his three promissory notes, for $12,000 each, payable on the 1st January, 1862, 1863, and 1864, respectively, and a mortgage on the land and other property, containing a power of sale, on default being made in the payment of any of the notes at maturity. Cochran died, intestate, during the year 1860; and letters of administration on his estate were regularly granted, by the Probate Court of said county, to Jason G. Jones, one of the defendants, who accepted the trust, and discharged its duties until January 1, 1876, when he resigned, and letters of administration *de bonis non* were then granted to the complainant. On the 8th October, 1863, while said Jones was acting as administrator of said estate, he entered on the records a release of the lands from the said mortgage, and accepted from said Calloway a mortgage on other lands in lieu of it. The slaves conveyed by the first mortgage were emancipated by the war, and the mules and horses were forcibly taken by the Federal army in 1865. On foreclosing the second mortgage, only about $2,000 was realized, which was applied by said Jones as a credit on the mortgage debt; and on the 26th June, 1867, he obtained a judgment against said Calloway for the unpaid balance of the debt, amounting to $19,183.84. An execution on this judgment was returned "No property found," Calloway being insolvent; and said Jones and the sureties on his official bond as administrator were also insolvent when the bill was filed.

In reference to the release of said mortgage, and the acceptance of the new mortgage from Calloway, the bill contained the following allegations: "While said Jason G. Jones was acting as administrator of the estate of said Cochran, and was in possession and control of said mortgage, and while the debt for said lands sold to said Calloway was still due and unpaid, the said Jason G. Jones did, without authority of law, and contrary to the interest of said estate, and in violation of the rights of creditors and heirs of said estate, on, to-wit, the 8th October, 1863, attempt to release the lien upon said lands in favor of said estate, by entering upon the margin of the record of said mortgage the following words," quoting them. "Said attempt to release was made without any consideration whatever of benefit or value moving to said estate, and was made solely for the purpose and with the intent to gratify and accommodate said W. R. Calloway and W. O. Baldwin, and not with any intention or expectation on the part of said Jones of benefitting said estate; and

although it is true, as recited in said marginal entry, that another mortgage on real estate was given in lieu of that attempted to be released as aforesaid, yet complainant avers that said new mortgage by said Calloway embraced and covered only a lot of land which then was, and ever since has been, less in value by (to-wit) two-thirds than that embraced in said first mortgage ; that the land attempted to be released was then worth $45,000, and is now worth $15,000, while the land upon which said new mortgage was taken was not then worth more than $15,000. And complainant avers that, at the time of said attempted release, the late war was flagrant ; slaves had been declared free by the president of the United States ; their value as security for the payment of money depended on the hazard of Confederate success ; the mules and other personal property mentioned in said mortgage were subject to the fortunes of war, and liable to be taken and carried away by invading armies ; and the lands mentioned in said mortgage, and thus attempted to be released, then were, and were known by said Jones, Baldwin and Calloway to be, the most valuable part of the security taken by said intestate for the payment of said money, as shown by said mortgage. Nevertheless, the said Jones, at the request of said Calloway, did attempt to make said release, and did make said marginal entry of release, without being moved thereto by any lawful consideration. And complainant avers, that said Baldwin, at the time of said transaction, well knew all the facts hereinbefore alleged ; and further, that said transaction was had and done at the instance of said Baldwin, and for his benefit, who desired to invest in said lands Confederate money, then fluctuating, and dependent for its ultimate value on the result of the desperate conflict then being waged by the Confederate States against the United States ; and further, that said Baldwin, after said pretended release, did pay said Calloway for said lands entirely in Confederate currency, and took a conveyance thereof to himself, and still holds the said lands under the title so derived, and none other. Said Jones had no order, or authority from any court, or from any other source whatever, to make any such release as he atttempted ; and said Baldwin well knew this at the time, and, by investing his Confederate money in said land, attempted to avoid the risk of loss by what might possibly be the result of the war, and put said risk upon the creditors and distributees of said estate, many of said distributees being minors, as said Baldwin well knew."

The prayer of the bill was, that the attempted release of the land might be cancelled and vacated ; that the original mortgage, which was alleged to be in the possession of said

Calloway, if not destroyed by him, might be declared to be the property of complainant as administrator, and a valid and subsisting security for the payment of the amount still due and unpaid on the mortgage debt; that an account might be taken of the mortgage debt, and the mortgage be foreclosed for its payment; that Baldwin might be charged with the rents and profits of the land; and the general prayer was added, for other and further relief.

The defendant Baldwin filed an answer, in which was incorporated a demurrer to the bill, assigning the following (with other) grounds of demurrer: "1. The facts set forth in said bill do not show that complainant has any right to the relief he seeks against this respondent. 2. There is no averment of any fraud or collusion between the said Jones and Calloway, in making said release, and taking said new mortgage. 3. The facts set forth in the bill show that said Jones, as such administrator, was authorized in law to do what he is charged to have done in releasing said lands and taking a new mortgage; and there is no fraud or want of good faith charged on the part of said Jones, Calloway, or this respondent. 4. The facts set forth in said bill show that complainant has no right to hold this respondent, or the lands bought by him from said Calloway, liable on the judgment he seeks to enforce." The chancellor overruled the demurrer, and his decree on the demurrer is assigned as error.

WATTS & SONS, for appellant.—In equity, a mortgage is but a security for a debt, and an incident of the debt, passing by an assignment of the debt. It is a mere *chose in action*, and devolves on the personal representative of the mortgagee, in the event of his death.— *Wilson v. Troup,* 2 Cowen, 195; 11 John. 593; *Scott v. McFarland,* 13 Mass. 309; *Emanuel v. Hunt,* 2 Ala. 190; *Center v. P. & M. Bank,* 22 Ala. 751; *Lewis & Lyman v. Wells,* 53 Ala. 198; *Knox v. Easton,* 38 Ala. 345. The power which an administrator had at common law, over the *choses in action* of the estate, is unrestricted by our statutes.— *Woolfork v. Sullivan,* 23 Ala. 548. Having the power to release the debt, he must have the right to release the incident or security, since the greater power includes the less.— *Beattie v. Abercrombie,* 18 Ala. 9. There is no charge of fraud or bad faith on the part of the administrator, and all the facts stated may consist with good faith and perfect honesty of intention. If he acted in good faith, his acts are binding on the heirs and creditors of the estate, and cannot be impeached by the administrator *de bonis non.*— *Waller v. Ray,* 48 Ala. 468; *Van Hoose v. Bush,* 54 Ala. 342; *Waring v. Lewis,* at the last term.

H. A. HERBERT, with E. P. MORRISSETT, *contra.*—An administrator is undoubtedly clothed with large powers, both at common law, and by statute; nevertheless, he is but a trustee for the distributees and creditors of the estate, and, like other trustees, his power and duty are commensurate. His powers are conferred for the benefit of the estate, and to enable him to perform his duties; and where his duty stops, his power ceases. He cannot pay his own debt with a *chose in action* of the estate; and the creditor who knowingly receives it from him, with the knowledge of the breach of duty on his part, can claim no benefit from it. What he cannot do for a personal benefit to himself, he cannot be allowed to do through friendship, nor through mere caprice. There is no pretense, in this case, that any consideration of benefit to the estate entered into the transaction which the bill seeks to set aside: on the contrary, the security was greatly impaired, and the act eventuated in loss to the estate. Taking all the accompanying facts into consideration, which were well known to both Baldwin and the administrator, the release was as much *ultra vires*, as if Baldwin had taken it for the individual debt of the administrator.—1 Lomax on Executors, 346, § 9. When an administrator acts beyond the bounds of his authority, his acts may be repudiated by the beneficiaries of the estate, or by a succeeding administrator.— *Wood v. Sullens*, 44 Ala. 688; *Kavanaugh v. Thompson*, 16 Ala. 826; *Swink's Adm'r v. Snodgrass*, 17 Ala. 653; *Lawson v. Lay*, 24 Ala. 187; *Wyatt v. Rambo*, 29 Ala. 510; *Ventris v. Smith*, 10 Peters, 191.

BRICKELL, C. J.—The bill is founded on two propositions, each of which we are constrained to answer negatively, and adversely to the right preferred by the complainant. The first is, that Jones, the administrator of Cochran, was without power to release the mortgage executed by Calloway to the intestate in his life, without payment of the debt. We have, in two recent cases, been compelled to enter into a full consideration of the power of executors and administrators, in the absence of statutes restraining it, over the personal assets. The conclusion we reached is, that he has the full legal title to the choses in action of the deceased, and is charged with the duty of collecting and reducing them to possession. Over them he has an absolute power of disposal, and may sell, assign, transfer, release, compound, or discharge them. No *bona fide* dealing with him can be disturbed. It is only when fraud or collusion exists—when those dealing with him participate in a *devastavit* he is contemplating, or actually committing, within their knowledge—

(30)

that transactions with him can be avoided by creditors, distributees, or legatees.—*Waring v. Lewis*, 53 Ala. 615; *Van Hoosi v. Bush*, 54 Ala. 342.

2. In equity, a mortgage is strictly and wholly a security for a debt. If no debt exists, a mortgage is impossible.—*West v. Hendrix*, 28 Ala. 226; *Robinson v. Farrelly*, 16 Ala. 472; 2 Story's Eq. § 1018. At common law, on the death of the mortgagee, the legal estate descends to his heirs. It is, however, a mere dry, naked legal estate, subsisting only for the purpose of keeping the mortgage alive as a security for the debt, and is held in trust by the heir for the benefit of the personal representative, to whom the debt passes as assets; incapable of alienation or release, so as to affect the title or the security for the debt.—*Taft v. Stevens*, 3 Gray, 504. In equity, the mortgage passes as an incident, with the debt, to the personal representative, who alone can foreclose it, or discharge its condition, by receiving satisfaction of the debt, or by compounding it, or by extinguishing it, in any mode by which other debts passing to him may be extinguished.—Story's Eq. § 1016; 1 Lomax on Ex'rs, 395; 2 Redf. Ex'rs, 129, 452; 1 Williams on Ex'rs, 607. A mortgage may be discharged, or released, as well as paid; and this, either by a direct and express agreement made for the purpose, or by construction and implication of law, arising from other acts of the parties.—1 Hill. Mort. 485; 2 *Ib.* 458. The debt being the principal, and the mortgage but an incident; the debt passing to the personal representative, as assets, and he having the power over it which he has over other personal assets; the consequence is, he has power to release the mortgage, or, by an assignment of the debt, to transfer it to another. The first proposition asserted by the bill is not maintainable. It was within the power of Jones, as administrator, to release the mortgage by the acceptance of other security, by express agreement, or by implication of law. If third persons, dealing in good faith with the mortgagor, were induced into transactions by him, on the supposition that it was released, from which they must sustain loss, the mortgage cannot be set up against them.

3. The next proposition made by the bill is, that the release of the mortgage, under the facts stated, was a *devastavit*, in which Calloway, the mortgagor, Baldwin, the purchaser from him, and Jones, the administrator, concurred. All that can be asserted from the averments of the bill, taking them in the strongest aspect, is, that Jones may have been indiscreet and injudicious in making the release, of which Calloway and Baldwin had knowledge, and by persistent solicitation induced him into its execution, that Cal-

[Baldwin et al. v. Hatchett, adm'r, &c.]

Ioway might sell, and Baldwin purchase the lands. It is not averred that it was intended to defraud the *cestuis que trust* of Cochran's estate—to involve them in a loss of the debt; nor that Jones was influenced by selfish or corrupt motives— that any possible personal benefit could come to him from the transaction. The general proposition, unquestionably, is, that those dealing with an executor or administrator are not answerable for his indiscretion, nor for his bad faith, unless knowledge of his bad faith is imputable to them : contrivance must appear.—*Field v. Scheifflin*, 7 Johns. Ch. 150 ; Perry on Trusts, § 225 ; 1 Story's Eq. § 579.

Without resting our conclusion on this ground, the bill is far from disclosing that Jones, in making the release, committed a *devastavit*, and incurred personal liability. As we have seen, it was within the line of his authority to release the mortgage. Keeping within the line of duty and authority, he was bound to good faith, and reasonable diligence ; and if, exercising these, a loss results, he is free from blame, and does not incur personal liability.—*Dean v. Rathbone*, 15 Ala. 328 ; *Gould v. Hayes*, 19 Ala. 459. The facts and circumstances existing at the time he enters into a transaction, not subsequent events, are material to be considered in determining the degree of his diligence. The release was not made by Jones, without a new and valuable consideration passing to him from the mortgagor. In consideration of it, a new mortgage was executed, on other real estate, of value sufficient to satisfy so much of the mortgage debt as was unpaid. Jones retained a mortgage on personal property, then probably of sufficient value to satisfy the debt. If he had been in possession of money, assets in his hands, to the amount of the mortgage debt, which he had authority to loan, no want of prudence could have been attributed to him in making a loan on the security he had for this mortgage debt after the release.

It seems to be supposed, because the security released was of much greater value than that he received, he was bound to retain it, not to exchange it, without receiving another of equal value. We cannot assent to the proposition. His duty was discharged, legally and morally, so long as he had and kept ample security for the debt. This transaction occurred in 1863, and the liabilities and rights of the parties must be determined by the facts then existing. On these facts the parties acted, and were compelled to act. If then the transaction had been assailed, it cannot be doubted that it would have withstood the test of judicial scrutiny. It would be gross injustice now to unsettle and destroy rights then fairly and justly established, because subsequent events

have produced losses, which could not be, and were not anticipated. We cannot impute bad faith, and neglect of duty, to an administrator, who was acting within the line of his authority, exercising the diligence a man of ordinary prudence would have exercised in a similar transaction, under similar circumstances.

The bill is without equity; the decree of the chancellor, overruling the demurrer, must be reversed, and the cause remanded, that the demurrer may be sustained, and the bill dismissed.