(79 South. 450)

GRAHAM et al. v. GRAHAM et al.
(3 Div. 339.)

(Supreme Court of Alabama.    June 13, 1918. Rehearing Denied June 29, 1918.)

1. CONVERSION ⬅20 — EQUITABLE CONVER-
SION.
Where husband gave mortgage securing debt to his wife, and the trustee turned the property over to the wife and the husband managed it for her, the doctrine of equitable conversion did not apply.

2. CONVERSION ⬅22(1)—EQUITABLE CONVER-
SION.
Where husband gave mortgage securing debt to his wife, and the trustee turned the property over to the wife, and the husband managed it for her, the doctrine of equitable conversion did not apply, nor did the doctrine of reconversion, since the wife was not such an absolute owner as that she could at her election take the property in lieu of the proceeds of foreclosure, nor could the absolute title pass to the wife through the husband's silent acquiescence in her alleged claim of absolute ownership.

3. HUSBAND AND WIFE ⬅68 — OWNERSHIP
OF PROPERTY.
Since a married woman may hold real estate in her own right, if the real estate be a home place in which she resides, the presence of her husband does not detract from her full possession and ownership.

4. MORTGAGES ⬅143—RIGHTS OF MORTGAGEE
—JOINT POSSESSION OF MORTGAGOR AND
MORTGAGEE.
Where husband gave mortgage to secure his debt to his wife, and the mortgage trustee turned the property over to the wife, and they both resided thereon for over 30 years, the possession of neither being adverse, the situation was the same as if neither had been in possession, and, unless affected by the lapse of time to raise a presumption of payment of the mortgage debt,

their separate interests in the property remained the same.

**5. PLEADING ⊚═8(11)—CONCLUSIONS.**

Allegation that the mortgagor's possession was permissive and subordinate is a mere conclusion of the pleader.

**6. MORTGAGES ⊚═319(1)—PAYMENT—PRESUMPTIONS.**

The doctrine that payment is presumed after the lapse of 20 years is available to the mortgagor who holds in subordination to the mortgage.

**7. MORTGAGES ⊚═319(1)—PAYMENT—PRESUMPTION.**

The presumption of payment after 20 years without recognition of liability is conclusive.

**8. PARTITION ⊚═46(1)—PARTIES—OUTSTANDING MORTGAGE HOLDERS.**

The holder of an outstanding mortgage lien created by the common ancestor of complainants and defendants was not a necessary party to bill praying for sale of the lands and partition.

**9. LIMITATION OF ACTIONS ⊚═180(2)—DEMURRER—EFFECT.**

Where bill for sale for partition prayed that defendants be charged with amounts of money realized on a mortgage against the property executed by the common ancestor, the proceeds being paid to defendants, but did not aver that the amounts were intended as advancements, a demurrer on the ground that the debts were barred by limitations, which, if true, did not appear on the face of the bill, was properly overruled.

Appeal from Circuit Court, Montgomery County; Gaston Gunter, Judge.

Suit by D. M. Graham and another against Peter H. Graham and others. From the decree rendered defendants appeal. Affirmed in part and reversed in part and remanded.

W. P. McGaugh, of Montgomery, and Eugene Ballard, of Prattville, for appellants. W. A. Gunter, of Montgomery, for appellees.

SAYRE, J. This bill is filed by two of the six children and heirs at law of Mildred R. Graham, deceased, against the others, praying for a sale of lands in Autauga and Montgomery counties for partition. Other parties claiming the right to stand in the shoes of some of the heirs as to parts of the property are made defendants, and as against them incidental and collateral relief is prayed. Demurrers to the bill in its entirety and to parts thereof were overruled in the court below, and defendants have taken this appeal.

Complainants claim title by inheritance from their mother, Mildred R. Graham, while defendants claim through William A. Graham, deceased, husband of Mildred R. and father of the six children aforesaid. Complainants aver title to the lands in Autauga as follows:

"That the title to the lands of the said Mildred R. Graham in Autauga county, herein sought to be sold for division came to the said Mildred R. Graham through a mortgage made by her husband, the said Wm. A. Graham, Sr., on the 13th day of October, 1875, to Leonard Sims, as trustee, for the said Mildred R. Graham, to secure the payment of the sum of $10,-000, due by the said Wm. A. Graham, Sr., to the said Mildred R. Graham, payable on the 1st day of January, 1876, which said mortgage was duly recorded in the office of the judge of probate of Autauga county at its date. That the mortgage embraced other property than that herein sought to be sold for division. In said mortgage was a conveyance of certain real estate known as the 'Morgan Place,' but this was afterwards sold and conveyed with the consent of said Mildred R. Graham to third persons, and she allowed the said Wm. A. Graham, Sr., to have the proceeds thereof. That there was some personal property also conveyed in said mortgage, but said Mildred R. Graham allowed the said Wm. A. Graham, Sr., to use the same for the benefit of his family. That the said mortgage debt was not paid at maturity or at any time thereafter, and that at the maturity of said mortgage debt the said property embraced therein, herein sought to be sold for partition, was turned over by said trustee to the said Mildred R. Graham and she went into possession thereof, and so remained by consent of said trustee in her possession as the owner of said property from the maturity of said mortgage to her death in 1908. That the said Leonard Sims died a few years after the maturity of said mortgage, and as the said mortgage embraced all the property of said Wm. A. Graham, Sr., no foreclosure thereof was necessary or useful, and therefore none was had, and that the said Mildred R. Graham, after the maturity of said mortgage debt, remained in possession of said lands as the owner thereof until her death, as aforesaid, in 1908, all with the consent of her said husband, and said trustee Leonard Sims, whereby her title to said property became absolute. Wm. A. Graham, Sr., managed and used the same for her and as her trustee under the law until her death in 1908, after which he remained in possession of his life estate therein until his death in 1907, as aforesaid."

The mortgage to Sims as trustee recited an indebtedness of William A. Graham, Sr., to his wife, Mildred R., in the sum of $10,000 on account of her share in her father's estate, which had been received by her husband, and by him converted to his own use, and provided for a foreclosure in the event of nonpayment. The stipulation of the concluding clause of the instrument was that:

"The said sum of money so by him [the trustee] received for my said wife [as the result of a foreclosure], he shall hold for the sole use and benefit of my said wife to be invested in any manner or disposed of as my said wife may direct in writing."

Notwithstanding the foregoing averments of the bill, among the rest "that at the maturity of said mortgage debt the said property embraced therein, herein sought to be sold for partition, was turned over by said trustee to the said Mildred R. Graham, and she went into possession thereof, and so remained by consent of said trustee in her possession as the owner of said property from the maturity of said mortgage to her death in 1908," appellees say in their brief that:

"The trustee could hardly have accepted the trust, for no affirmative act of his, so far as we know was ever done, recognizing it in any respect; and, if he accepted, there were imperative duties for him to perform which he seems to have neglected. * * * His conduct during

life [he died a few years after the maturity of the mortgage] and that of the husband and wife for 40 years show that he, the trustee, probably did not accept the trust. Therefore, as in the case of In re Gordon, cited also as Roberts v. Gordon, L. R. (1877) 6 Chan. Div. 531, the legal estate remained in W. A. Graham, as on a covenant to stand seized to the use of another, here for the use of the wife, and on the maturity of the debt, no sale being insisted on by the mortgagor, and no sale being necessary except to separate the interest of the wife and the husband, and the 640 acres of land being all the property of the husband and wife, they had the right to convert the debt to the wife into real property, by waiving a sale and taking the property by the wife as an investment in land, which they did. The taking of the property and keeping it and using it for 32 years as real estate, until the death of the wife in 1908, is conclusive evidence of such election and conversion of the wife's estate into real property. And this may be taken as proof of the allegation in the bill that the interested parties made this election and conversion. The mortgage provided for the investment of the $10,000, on realization on sale under the power in the mortgage, and, no one being interested but the wife and the husband, they had the right, or the wife had with the husband's consent, to accept the property as an investment, which she did, and the husband consenting, as he did, as is conclusively evidenced by his silence for 40 years to assert his equity of redemption, the 640 acres became the property of the wife in fee and stood in the husband's possession as trustee of her separate estate until her death, and afterwards, until his death in 1917, as possessor of a life estate therein, under the statute. This is the whole argument, and these are all the material facts necessary to make out the argument."

The demurrer takes the point that the averments of the bill are too vague, indefinite, uncertain, and contradictory to support the conclusion of absolute ownership in Mildred R. Graham, under whom complainants claim. In the consideration of this demurrer our effort is to deal with the facts alleged in the bill. Complainants, having undertaken to show their title, must show a good title. By the mortgage of October 13, 1875, the husband's title to the land in question was pledged as a security for his debt to the wife, and a mortgage it still is, unless by the mere lapse of time or by the averment of facts sufficient thereunto it is made to appear that there has been a change. So far as concerns action by the trustee, the averment is that the land "was turned over by said trustee to the said Mildred R. Graham." There is no averment of foreclosure, or that the trustee at any time went into possession; on the contrary, it is averred that:

"Wm. A. Graham, Sr. [the husband] managed and used the same for her and as her trustee under the law until her death in 1908."

As for anything done by the trustee, the status of title and right created by the mortgage remains unchanged. Perry on Trusts (5th Ed.) § 602d.

[1] We are unable to see that the doctrine of equitable conversion, to which appellees refer, has any appropriate office to perform in the circumstances of this case. According to Mr. Pomeroy, conversion has been briefly and accurately defined as "that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible and descendible as such." The doctrine depends upon the principle that a court of equity looks upon that as done which the parties to an agreement have contracted to do, so far as the contract could have been carried into effect without violating any principle of equity or rule of law. 3 Pom. Eq. Jur., § 1159, and note. In this connection it seems sufficient to say that the husband's contract was to repay the wife. But appellees' more specific reliance is upon cases and authorities which establish the doctrine of reconversion. Roberts v. Gordon, supra, was a case of that character. "By reconversion is meant that notional or imaginary process by which a prior constructive conversion is annulled and taken away, and the constructively converted property is restored, in contemplation of a court of equity, to its original actual quality." 3 Pom. Eq. Jur. § 1175. Supposedly relevant provisions of the mortgage made by William A. to Mildred R. Graham, and more specifically the concluding stipulation thereof, have been stated above. To the rights thus shown, and to the situation of the parties to the mortgage disclosed by the averment of facts, the rationale of the doctrine of reconversion renders that doctrine inapplicable. "The rationale of this doctrine is clearly found in the right which every absolute owner or donee has to dispense with or forbid the execution of any trust in the performance of which he alone is interested. Reconversion is the result of an election expressly made or inferred by a court of equity. It depends wholly upon the right of election held by the person entitled to the property to choose whether he will take the property in its converted condition or in its original and unconverted form." Id. It is obvious that Mildred R. Graham was not such an absolute owner as that she could, at her election, take the mortgaged property in lieu of the proceeds of the foreclosure for which the mortgage provided. Nor, apart from questions arising out of possession and lapse of time, could the absolute title be made to pass to the wife through the medium of the husband's mere silent acquiescence in her alleged claim of ownership in absolute fee, which, for aught appearing, was as silent as the husband's acquiescence.

Complainants aver in the alternative that:

"If orators are mistaken in their averments as to the nature of the possession of the said land by the said Mildred R. Graham up to and after the maturity of the said mortgage to the said Sims as trustee, then they aver that the said mortgage is a debt still due and unpaid, with interest thereon from the date of its maturity until this time, belonging to the heirs at law of Mildred R. Graham and the distributees of her estate; and they ask in that event that it be foreclosed on said land in Autauga county known as the 'Home Place,' and described in said mortgage, and that the proceeds of such

foreclosure be divided and partitioned between the heirs of Mildred R. Graham as herein sought, as to the real estate. And they aver that the holding of said lands before the maturity of said mortgage by the said mortgagor was permissive and subordinate to the title of the said Leonard Sims as trustee, and that after the maturity of said mortgage debt the possession of said land was likewise permissive and subordinate to the rights of the said trustee during his life, and that after his death no other trustee was appointed and the possession of said lands thereafter remained permissive and subordinate to the rights of the parties entitled to the benefit of the trust created by said mortgage to this date, and is neither barred by limitations nor operated upon by prescriptions."

[2-7] The question raised by this alternative turns upon the legal intendments of the situation as between mortgagor and mortgagee in joint possession, residing together upon the mortgaged property as man and wife, for more than 30 years. We take account, of course, of the averments as to the nature of the possession during this time. These averments are but the conclusions of the pleader as to the legal effect resulting from the mortgage and the joint possession of the husband and wife, mortgagor and mortgagee—we treat the cestui que trust under the mortgage or deed of trust as a mortgagee, after the death of the trustee, at least. Since a married woman may hold real estate in her own right, it may be conceded that she holds possession of her lands as completely as if she were a feme sole, and that, if the real estate be a home place in which she resides, the presence there of her husband does not in the least detract from her full possession and ownership. Mygatt v. Coe, 152 N. Y. 457, 46 N. E. 949, 57 Am. St. Rep. 521. But the right of the wife in this case was in the beginning that of a mortgagee only—according to the American equitable theory of a mortgage, she held a mere security for her debt, and, in the absence of a foreclosure, that remained the status of her ownership (Baldwin v. Hatchett, 56 Ala. 461)—and since both mortgagor and mortgagee were rightfully in possession until recent date, the possession of neither being by any possibility adverse to the other, we conceive the legal consequences of such a situation to be the same as if neither had been in possession, with this result, that the true present status in respect of their separate interests in the property is just what it was in the beginning, unless the lapse of time, without more, has operated to raise a presumption of payment of the mortgage debt. True, it is averred that the mortgagor's possession was permissive and subordinate; but this is a mere conclusion of the pleader (Vaughn v. Vaughn, 180 Ala. 217, 60 South. 872), and in any event, in the peculiar circumstances, means nothing in respect of the mortgage debt or the title pledged for its security. The doctrine that payment is presumed after the lapse of 20 years is available to the mortgagor who holds in subordination

to the mortgage. Relfe v. Relfe, 34 Ala. 500, 73 Am. Dec. 467. And the presumption of payment after 20 years, without recognition of liability is conclusive. Snodgrass v. Snodgrass, 176 Ala. 276, 58 South. 201, and cases cited. We conclude, therefore, that complainants (appellees) have by their alternative averment shown no title or interest in the Autauga lands.

[8-9] With reference to the tract of land in Montgomery county, it is conceded that complainants have a right to a sale for partition. The holder of the outstanding mortgage lien created by the common ancestor of complainants and defendants was not a necessary party. Inman v. Prout, 90 Ala. 362, 7 South. 842. The bill also asks that the outstanding mortgage be paid out of the proceeds of sale, which, of course, will not be done if there is a sale subject to the mortgage, and then asks that the two defendants, Peter H. Graham and William A. Graham, Jr., who received from their ancestor the money realized on the mortgage, be charged with the amounts so received, and that such amounts be deducted from their respective shares. There is no averment that these amounts were intended as advancements. The averment is that they were lent, and one ground of demurrer to this part of the bill asserts that these debts are barred by the statute of limitations; but this does not appear to be the case upon the face of the bill; and this ground of demurrer was properly overruled.

The demurrer to so much of the bill as seeks a sale of the Autauga lands should have been sustained, and for the error as to it the decree must be reversed.

Let the costs of this appeal be taxed against the appellees.

Affirmed in part, reversed in part, and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.