This is a dispute between a stepfather, E.J. Ward, and a stepdaughter, Betty Grass, over rights in a house at 558 Glenwood Street in Mobile, following the death of Mabel Ward. Mabel Ward, who died intestate, was the wife of E.J. Ward and the mother of Betty Grass. The question here is whether E.J. Ward was entitled to a life estate in the property pursuant to the statutory right of curtesy, thereby precluding immediate possession of the premises by Betty Grass. The trial court found the interest of Betty Grass in the house subject to a life estate in her stepfather. We affirm.
Mabel Ward had previously been married to Ralph Thurman. Ralph Thurman, pursuant to a divorce decree, executed an instrument, on March 25, 1942, permitting Mabel to live in the house on Glenwood Street so long as she paid the house's mortgage payment. The instrument further provided that:
 "I [Ralph Thurman] hereby covenant and agree that when the final payment on said mortgage has been made, and/or when my liability on said mortgage ceases, I will promptly execute a Quitclaim Deed conveying to the said Mabel Thurman all of my right, title and interest in and to the property hereinabove described."
Mabel Ward made all the mortgage payments and the mortgage was satisfied in 1948, thereby releasing her former husband from liability on the mortgage. For some unexplained reason, however, although she continued to live in the house, she never procured a deed to the house from her former husband. She died in Mobile County in 1981.
The facts indicate that on September 23, 1981, Betty Grass, plaintiff-appellant, obtained a quitclaim deed to the house from her father, Ralph Thurman. She subsequently brought suit against her stepfather, claiming title to the house and a right to possession by virtue of the deed. E.J. Ward, defendant-appellee, as widower of Mabel Ward, claimed possession of the house under a right of curtesy.
In its order, the trial court reasoned that Mabel Ward's interest under the instrument executed by her former husband, Ralph Thurman, was real property as opposed to personal property because an equitable conversion took place in 1948, when she satisfied the mortgage and became entitled to demand a deed to the house. Hence, the trial court ruled that under the terms of the curtesy statute, Code 1975, § 43-3-12,[1] which was in effect at the time of Mabel Ward's death, defendant, as widower of Mabel Ward, was entitled to the use of the house for his lifetime and that plaintiff's quitclaim deed from her father was subject to the life estate. This appeal followed.
Appellant asserts that the instrument executed by Ralph Thurman agreeing to convey title to the house on Glenwood Street to Mabel Ward, if she paid off the mortgage, merely created a leasehold interest which expired at her death, and thus her estate acquired no interest in the real property so as to create, by virtue of the curtesy statute, a life estate on appellee's behalf. Appellant further contends that since Mabel Ward never asserted her right to demand a deed from Ralph Thurman, the agreement cannot be enforced, because the *Page 805 
statute of limitations has run.[2]
Prior to repeal,[3] Alabama's curtesy law provided:
 "If a married woman having a separate estate dies intestate, leaving a husband living, he is entitled to one-half of the personalty of such separate estate absolutely; and to the use of the realty during his life."
Because this section was in effect at the time of Mabel Ward's death in 1981, and because its constitutional validity was not questioned, we must ascertain what interest she possessed at the time of her death, in order that we may determine if the appellee was entitled to a life estate, as the trial court held. This necessarily requires us to examine the instrument executed by Ralph Thurman.
To paraphrase its terms, Ralph Thurman agreed to convey the house to Mabel Ward by quitclaim deed on the condition she first satisfy the mortgage, thereby releasing him from any remaining obligations under the terms of the mortgage. We construe this agreement as being essentially one which, by its terms, permitted Mabel Ward to obtain title to the property upon the performance of certain conditions. The nature of a contract is to be determined by its terms and conditions.McGuire v. Andre, 259 Ala. 109, 115, 65 So.2d 185, 190 (1953).
The agreement here imposed no binding obligation upon Mabel Ward, but when she paid off the mortgage, she became entitled to receive a quitclaim deed from Ralph Thurman. When, in this instance, the mortgage was satisfied in 1948 by Mabel Ward according to the terms of the 1942 agreement, the agreement essentially became a bilateral contract of purchase and sale. Cf. McGuire v. Andre, supra, 259 Ala. at 115, 65 So.2d at 190.
The trial court, by ruling that an interest in realty passed from the estate of Mabel Ward upon her death, thereby giving her surviving husband, the appellee, a life estate under the terms of § 43-3-12, correctly concluded that an equitable conversion occurred when she paid off the mortgage and fulfilled the terms of the agreement signed by Ralph Thurman. Clearly, the circumstances of this case can be likened to those existing when there is a purchase and sale of realty.
 ". . . Hence, when the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, the vendor of the purchase money. In equity the vendee has a real interest and the vendor a personal interest. Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion.
 "By the doctrine of equitable conversion under an executory contract of sale, the equitable estate, in its entirety, passes immediately to the purchaser at the moment the contract becomes effective and the bare legal title for security purposes remains in the vendor. The purchaser of the land is looked on and treated as the owner thereof, and the vendor, though holding the legal title, holds it as a trustee for the purchaser, and the vendee holds the purchase money in trust for the vendor. . . ." (Footnotes omitted.)
G. Thompson, 8A Commentaries on the Modern Law of Real Property
§ 4447. See McGuire v. Andre, supra. Cf. Graham v. Graham,202 Ala. 56, 79 So. 450 (1918). *Page 806 
We can conceive of no reasons that would otherwise require our ruling differently from the trial court here. According to the available facts, Mabel Ward, following her divorce from Ralph Thurman in 1942, not only paid off the house's mortgage in 1948, but continued to live in the house until her death in 1981. Although she did not receive a deed to the house, and apparently did not request one, she continued to live in the house until her death, despite the absence of legal title, obviously with the full knowledge of her former husband, who held legal title.
Because equity treats that as being done which should be done, we hold that once Mabel Ward complied with the terms of the agreement signed by Ralph Thurman, the real interest or equitable title passed to Mabel Ward, and Ralph Thurman held the legal title in trust for Mabel Ward. Under these circumstances, the statute of limitations did not run, and appellant's argument in this respect is without merit. Sykes v.Sykes, 262 Ala. 277, 78 So.2d 273 (1954). There, the Court stated:
 "`The statute of limitations does not begin to run against a resulting trust so long as there is a recognition of such trust by the trustees . . . that is to say that each recognition of the trust affords a new beginning of time and each case stands upon facts and circumstances affecting such question. . . .'"
In this case, the court could have found that E.J. Ward recognized the resulting trust up until the date of death of his former wife.
Consequently, appellee was, under the terms of the curtesy statute in effect at the time of Mabel Ward's death, entitled to a life estate in the house, as the trial court properly concluded. The judgment of the trial court is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] We do not address the question of the constitutionality of the curtesy statute because the issue was not raised below.
[2] Appellant cites the statute of limitations period found under either § 6-2-33 (1), Ala. Code 1975 (actions founded upon any contract or writing under seal must be commenced within 10 years), or § 6-2-34 (actions founded on promises in writing not under seal must be commenced within 6 years), as precluding enforcement of this agreement.
[3] Section 43-3-12 was repealed by the Law of Intestate Succession and Wills Act of April 26, 1982, Act No. 82-399, 1982 Ala. Acts 578, which became effective on January 1, 1983.