Kenneth W. Hudson ("the executor") appeals from a judgment awarding an elective share of the estate of Curtis W. Hudson to Elizabeth Nesmith Hudson. Our supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975. We reverse and remand.
Curtis Hudson died in November 1993. The executor is one of Curtis Hudson's children from his marriage to Ruby Hudson. Curtis and Ruby Hudson were divorced in 1982. Elizabeth and Curtis Hudson were not formally married, but during other proceedings during the pendency of the administration of this estate, the trial court determined *Page 14 
that Elizabeth had been Curtis Hudson's common law wife. Shortly after the trial court entered a judgment declaring that Elizabeth had been Curtis Hudson's wife by the common law, she filed, as his widow, a "claim of surviving spouse" against the estate. In response, the executor alleged that she had taken property in excess of her claims. After a hearing, the court awarded the widow a homestead allowance of $6,000 pursuant to § 43-8-110, Ala. Code 1975; a personal property exemption of $3,500 pursuant to § 43-8-111, offset by $1,500 in personal property of her choice from the estate; and a family allowance of $480 per month from February 1, 1994, until final disposition of the estate or the payment of the widow's share to her, pursuant to § 43-8-112. The executor appealed the judgment making that award; we affirmed, without opinion. SeeHudson v. Hudson, 682 So.2d 514 (Ala.Civ.App. 1996) (table).
In the meantime, the executor filed a complaint for a declaratory judgment. The complaint alleged that Curtis Hudson's will, which left everything to his former wife, Ruby, and their four children, was executed pursuant to the following provision of Curtis and Ruby Hudson's 1982 divorce judgment:
 "The Defendant [Curtis Hudson] will execute a Will leaving his estate to his four children, Kenneth, Shirley, Anita and Terry, who are all over the age of 19 years, and to the Plaintiff [Ruby Hudson], share and share alike. The Will will be executed and remain in proper form from this date forward."
The executor asked the trial court to declare that the divorce judgment and will created an equitable trust in the estate property[1] for the benefit of Ruby Hudson and the four Hudson children and that that trust was sufficient to defeat the widow's claims as a surviving spouse. The trial court treated the complaint for declaratory judgment as a motion for a summary judgment and ordered the parties to submit affidavits and briefs. The trial court entered a judgment holding that no trust was created and that the widow was entitled to her elective share of Curtis Hudson's estate. The widow filed a post-judgment motion asking the trial court to find that she was an omitted spouse; the trial court modified its judgment to include such a finding. The executor then filed a post-judgment motion; the trial court denied it.
Further background information will be helpful. Curtis and Ruby Hudson had been married for over 40 years when they divorced. They bought a farm in 1941, now consisting of 92.4 acres, on which they lived during the marriage. Ruby Hudson helped to work the farm and reared their four children. According to the record, the Hudsons' marriage was a difficult one for Ruby Hudson and the children. In addition, the record reflects that Curtis Hudson and Elizabeth Nesmith had an intermittent extramarital relationship for approximately 30 of the Hudsons' 40 years of marriage, although they were not involved in that relationship when Curtis and Ruby Hudson divorced. During the divorce proceedings, Ruby Hudson agreed to convey her interest in the farm to Curtis Hudson in exchange for his agreement to make a will leaving the property to her and the children after his death. Both honored their agreements. After the divorce, Elizabeth Nesmith and Curtis Hudson resumed their relationship and began living together as common law spouses in 1989. The executor testified that his father had "made the statement to me in Elizabeth's presence many times that he had set the farm in his divorce so that he had to leave it to my mother and us kids and the court had ordered that he couldn't change it." The widow testified in her deposition that she had seen Curtis Hudson's will before his death.
The doctrine of equitable conversion is decisive in this case. Our supreme court explained equitable conversion inGrass v. Ward, 451 So.2d 803 (Ala. 1984). In Grass, Ralph Thurman, pursuant to a divorce judgment, had executed an instrument in which he agreed to provide to his former wife, Mabel, a quitclaim deed to their house when his liability on the mortgage and note ended. Although Mabel continued to live in the house, she never obtained a deed from Thurman. Instead, their daughter, Betty Grass, *Page 15 
obtained a quitclaim deed to the house from her father. Mabel later married E.J. Ward; she died in 1981. Upon Mabel's death, Grass sued her stepfather, claiming title to the house and a right of possession by virtue of her deed. Ward claimed possession of the house under a right of curtesy.[2] Our supreme court stated:
 "The trial court . . . correctly concluded that an equitable conversion occurred when [Mabel Ward] paid off the mortgage and fulfilled the terms of the agreement signed by Ralph Thurman. Clearly, the circumstances of this case can be likened to those existing when there is a purchase and sale of realty.
 " '. . . Hence, when the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, the vendor of the purchase money. In equity the vendee has a real interest and the vendor a personal interest. Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion.
 " 'By the doctrine of equitable conversion under an executory contract of sale, the equitable estate, in its entirety, passes immediately to the purchaser at the moment the contract becomes effective and the bare legal title for security purposes remains in the vendor. The purchaser of the land is looked on and treated as the owner thereof, and the vendor, though holding the legal title, holds it as a trustee for the purchaser, and the vendee holds the purchase money in trust for the vendor. . . .' (Footnotes omitted.)
 "G. Thompson, 8A Commentaries on the Modern Law of Real Property § 4447. See McGuire v. Andre, [259 Ala. 109, 65 So.2d 185 (1953)]. Cf. Graham v. Graham, 202 Ala. 56, 79 So. 450 (1918).
". . . .
 "Because equity treats that as being done which should be done, we hold that once Mabel Ward complied with the terms of the agreement signed by Ralph Thurman, the real interest or equitable title passed to Mabel Ward, and Ralph Thurman held the legal title in trust for Mabel Ward. . . ."
451 So.2d at 805-06.
The doctrine of equitable conversion applies to the case before us as well. The terms of the judgment divorcing Ruby and Curtis Hudson required that Curtis make a will leaving his estate to his former wife and their children. Ruby Hudson testified that because Curtis Hudson had agreed to do that, she accepted a smaller property settlement and a smaller amount of alimony than she would have accepted without that agreement. When the trial court entered the divorce judgment requiring Curtis to execute the will, an equitable conversion occurred. At that point, the real interest or equitable title in the estate passed to Ruby Hudson and the four Hudson children, and all that remained to Curtis Hudson was the bare legal title, which he held in trust for Ruby Hudson and the children until his death.
This court previously has affirmed a trial court's order in a divorce proceeding directing a party to execute a will in a certain fashion. "A person may renounce the absolute power to dispose of his property as he wishes and can bind himself to will his property to a certain person." Bonham v. Bonham,489 So.2d 578, 581 (Ala.Civ.App. 1985), overruled on othergrounds, Ex parte Bayliss, 550 So.2d 986 (Ala. 1989). Furthermore, in McKinnis v. McKinnis, 564 So.2d 451
(Ala.Civ.App. 1990), this court held that a divorce judgment in which a husband was ordered to make his wife the beneficiary of an insurance policy gave her a vested equitable interest in the policy, and that he did not have the power to name anyone else as the *Page 16 
beneficiary. See also Williams v. Williams, 276 Ala. 43,158 So.2d 901 (1963) (judgment ordering father to make his children beneficiaries of an insurance policy gave the children a vested equitable interest in the policy).
Because we conclude that Ruby Hudson and the four Hudson children hold equitable title to Curtis Hudson's estate, we need not address other issues raised by the executor. The judgment is due to be, and it is hereby, reversed, and the cause is remanded with instructions for the circuit court to enter a judgment declaring that Ruby Hudson and the four children of Curtis Hudson (Kenneth Wayne Hudson, Shirley Ann Hudson Intoccia, Anita Gail Hudson Lammers, and Terry Lee Hudson) are entitled to divide the property remaining in the estate of Curtis Hudson pursuant to the terms of his will.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of §12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the judges concur.
[1] The principal asset remaining in the estate is 92.4 acres of farmland.
[2] Prior to repeal, Alabama's curtesy statute, § 43-3-12, Ala. Code 1975, provided: "If a married woman having a separate estate dies intestate, leaving a husband living, he is entitled to one-half of the personalty of such separate estate absolutely; and to the use of the realty during his life." Section 43-3-12 was repealed by the Law of Intestate Succession and Wills Act of April 26, 1982, Act No. 82-399, 1982 Ala. Acts 578, which became effective on January 1, 1983.