Van Buren Partnership ("Van Buren") filed this declaratory-judgment action against Mobile Eye Center, P.C. ("the Center"), in the Baldwin Circuit Court, asking for a declaration that a renewal option in a 1994 lease agreement between Van Buren and the Center required that the Center give notice that it would not renew the lease 120 days before the expiration of the lease term, and that, because notice of non-renewal was not given, the lease was automatically renewed for a five-year term. The trial court entered a judgment declaring that it was undisputed that the Center did not give written notice that it did not intend to renew the lease, and, therefore, that, under the renewal provision of the lease, the lease was automatically renewed for an additional five years. Furthermore, the trial court declared that because the Center had continued to occupy the leased premises and to pay rent, it had ratified the renewal provision. The Center appeals. We reverse and render a judgment for the Center.
The facts in this case are undisputed. On October 18, 1994, Van Buren and the Center entered into a commercial lease agreement; the term of the lease agreement was from September 1, 1995, to August 31, 2000. The two pertinent clauses in the lease are the holdover clause and the renewal clause. Those clauses provide:
 "HOLDING OVER. Should the Lessee continue to occupy the premises after the expiration of said term or after a forfeiture incurred, then, except as otherwise provided for in this paragraph, the Lessee shall continue as a tenant under the terms of this lease (except as to duration) from year to year, and each holding over period annually thereafter shall in like manner create and cause a similar extension of this lease from year to year. PROVIDED, HOWEVER, that if the said Lessee continues to remain in the premises after the expiration of the said term or after a forfeiture incurred, the Lessor, at any time, whether rent has been accepted by the Lessor or not, reserves the unqualified right, or option to notify the Lessee in writing of his election to terminate the lease or any extension thereof, said termination to be effective sixty (60) days from which said notice is given, unless less than sixty (60) days remain in said year, in which event the effective date of termination shall be the last day of the calendar month following the date on which notice is given."
 "RENEWAL OF LEASE. With the mutual consent of the parties this lease may be renewed for an additional five *Page 137 
 (5) year period, at a rental price term to be negotiated by the parties, subject to the same terms and conditions contained herein, excepting the requirement herein to negotiate the rental price term. Lessee shall give Lessor 120 days written notice if it does not intend to renew said lease. At the expiration of such additional five (5) year period, the provisions of this paragraph shall provide for a second renewal of the lease, and which is controlled by the terms and conditions herein."
(Emphasis added.)
On August 14, 2000, Robert Merritt, a principal partner in Van Buren, sent a letter to James W. Hartman III, the chief financial officer of Premier Medical Management, Inc.[1] In that letter, Merritt notified the Center that because he had not received notice that it did not intend to renew its lease, he assumed, pursuant to the terms of the lease, that it would be renewing the lease for an additional five-year period. He also stated that he would like to meet to discuss a new rental rate for the new term. On August 18, 2000, William Hunt, an agent of Van Buren, sent a letter to the Center notifying it that the monthly rent would be raised from $3,090 to $3,530, beginning September 1, 2000. However, on August 25, 2000, Hartman notified Merritt in writing that the Center did not agree with the assertions in the August 14 and the August 18 letters and would like to resolve the conflicting interpretations of the provisions of the lease.
There is no evidence in the record indicating that the parties ever agreed to a five-year renewal term. In fact, Merritt himself testified at trial that the Center never agreed to an additional five-year lease. Nevertheless, at the expiration of the original lease term, the Center remained on the leased premises, and it paid an average monthly rent of $3,450.
The Center later notified Van Buren that at the end of what it believed to be the one-year holdover period, it would vacate the premises. Van Buren then filed this declaratory-judgment action, asking the court to declare that at the expiration of the original lease term the lease had been automatically renewed for five additional years. After a bench trial, the trial court entered an order in favor of Van Buren. Specifically, the trial court stated that the holdover provision did not apply; therefore, pursuant to the renewal provision, the lease automatically renewed for five years when the Center failed to give notice that it did not intend to renew the lease. Furthermore, the trial court stated that the Center's remaining on the leased premises and paying the changed rental amount constituted partial performance of the renewal provision; thus, the trial court reasoned, the Center had ratified the agreement to renew the lease.
As previously stated, the facts in this case are not in dispute. Although the Center admits that it did not give notice within the 120-day period required by the lease that it would not renew the lease, Merritt admitted at trial that there was never an agreement between Van Buren and the Center to renew the lease for an additional five years. Accordingly, the resolution of this matter revolves around the terms of the original written lease agreement, specifically, the holdover clause. We have stated: *Page 138 
 "The question whether a contract is ambiguous is for a court to decide. State Farm Fire Cas. Co. v. Slade, 747 So.2d 293 (Ala. 1999). As long as the contractual terms are clear and unambiguous, questions of their legal effect are questions of law. Commercial Credit Corp. v. Leggett, 744 So.2d 890 (Ala. 1999). Thus, we apply a de novo review to a trial court's determination of whether a contract is ambiguous and to a trial court's determination of the legal effect of an unambiguous contract term."
Winkleblack v. Murphy, 811 So.2d 521, 525-26 (Ala. 2001).
We hold that the renewal provision here did not operate to automatically renew the lease. That provision clearly states that the lease "may" be renewed "[w]ith the mutual consent of the parties." Although it does state that the lessee shall give written notice if it does not intend to renew the lease, it does not say that if no such notice is given the renewal is automatic. Therefore, the renewal provision was merely an agreement to agree to a renewal of the lease, which is not enforced in Alabama. Muscle Shoals Aviation, Inc. v. MuscleShoals Airport Auth., 508 So.2d 225, 227 (Ala. 1987); Dixieland FoodStores, Inc. v. Geddert, 505 So.2d 371, 373 (Ala. 1987).[2]
Accordingly, we hold that when the Center remained on the leased premises, it was holding over, as provided by the holdover provision in the written lease agreement. The lease contains no merger clause, nor does it prohibit oral modification; therefore, the Center's agreement to the increased rental rate constituted an oral modification to the terms of the holdover tenancy. The Center is not bound by a five-year renewal of the lease agreement; instead, pursuant to the holdover clause, the Center was required to lease the premises for one year after the expiration of the original term of the lease, at the renegotiated rental price. For the reasons stated in this opinion, the trial court's judgment is reversed and a judgment rendered for the Center.
REVERSED AND JUDGMENT RENDERED.
Moore, C.J., and Lyons, Johnstone, and Woodall, JJ., concur.
[1] Premier Medical Management, Inc., is apparently a successor entity to Mobile Eye Center, P.C. The record indicates that Robert William Hyde, Jr., was chief financial officer of Premier Medical through May 15, 2000, and that James W. Hartman III became chief financial officer of Premier Medical on July 14, 2000. Because the record is unclear as to the exact relationship between Premier Medical and the Center, we will continue to refer to both entities as "the Center."
[2] Van Buren argues that we should apply the holding of BeverlyEnterprises, Inc. v. Fredonia Haven, Inc., 825 F.2d 374 (11th Cir. 1987), to this case. However, that case involved a question of fact as to whether the parties had orally agreed to renew a lease agreement. Id. at 377. The United States Court of Appeals for the Eleventh Circuit affirmed the district court's finding "that the parties [had] entered into a binding oral lease agreement." Id. at 378. The Court of Appeals went on to hold that the oral agreement fell within the part-performance exception to the Statute of Frauds. Id. at 380. In contrast, there are no facts here evidencing an oral agreement between the parties to renew the lease for five years. Therefore, without evidence of any mutual consent, part performance is not an issue in this case.