This is an action to quiet title brought pursuant to Ala. Code 1975, § 6-6-540. The trial court entered a judgment in favor of the plaintiff, James Hill. We reverse.
On May 5, 1988, James Hill and Mary Hill, a married couple, entered into a written contract with Gary D. Skipper and Quitman Hamm, as sellers, to purchase a parcel of land for $18,500. On November 3, 1988, the Hills entered into a second written contract with Skipper and Hamm to purchase a second parcel of land for $15,936. The contracts for purchase provided for installment payments to be made over a period of years by the Hills for each parcel of land, with covenants by Skipper and Hamm to convey the parcels to the Hills upon payment of all installments. Each contract also entitled Mary and James to maintain possession of the parcels for the period during which they were making the installment payments.
Apparently, Skipper and Hamm subsequently assigned their interests in the contracts to Sunco Properties, Inc. ("Sunco"). On August 30, 1994, James assigned to Mary his interest in both contracts, pursuant to written assignment agreements entered into by James, Mary, and Sunco. Eleven days later, on September 10, 1994, Mary was killed in an automobile accident. Following Mary's death, James continued to make the payments on both contracts. According to the testimony of a representative of Sunco, James also resided on the parcels and paid the property taxes due on them. He made the final payment on the first parcel on June 1, 1999, and he made *Page 557 
the final payment on the second parcel on July 24, 2000. On those dates, Sunco conveyed the respective parcels to the estate of Mary Hill.
Mary's heirs include James, five children from Mary's prior marriage(the "siblings"), and one grandchild.[1] One of Mary's children, JoAnne Gartman, testified that, after Mary's death, James attempted to convince her and the other siblings to sign documents that he said would enable him to sell the parcels. Gartman stated that the siblings refused to sign those documents after concluding that the documents would have conveyed their interest in the parcels to James alone. Gartman further testified that she and her siblings agreed among themselves to allow James to continue living on the parcels, knowing that James was making payments owed to Sunco under the above-described contracts. There was no testimony indicating that any of the siblings ever spoke to James about that alleged agreement. Gartman testified that she and her siblings considered James's payments to be "just like lot rent." Gartman compared James's payments to her own rental payments: "I can pay [rent] on [land] for 10 years; its not going to be mine." In addition, Gartman testified that Sunco had agreed to notify her or the other siblings if James quit making payments on the parcels so that the siblings could continue to make payments and retain the property.
Mary died intestate. At the time of her death, in addition to the parcels at issue in this case, which are located in Baldwin County, Mary owned certain property located in Florida. A probate estate was opened in Florida by James, but the Alabama land at issue was not referenced in that proceeding and Mary's heirs, other than James, himself, were not notified of that proceeding. No probate estate was ever opened for Mary in Alabama.
On June 13, 2002, the trial court entered a judgment in favor of James, finding, in pertinent part:
 "1. The plaintiff and his wife entered into a contract to purchase the land in question.
 "2. The plaintiff and his wife assigned the contract to the wife solely.
". . . .
 "7. The intent of the sellers in the contract was to convey the property to the plaintiff and his wife.
 "8. The title conveyance to the estate of Mrs. Hill was improper on the part of the sellers."
The trial court therefore ordered that title to the parcels be quieted in James. The other heirs of Mary Hill appeal from that judgment.
As a preliminary matter, we note that James does not base his claim to the parcels at issue in this case on his status as an heir of Mary Hill; nor does he claim title to the parcels through her estate. Instead, this is an action to quiet title in which the issue presented is whether the parcels should have been conveyed to the estate in the first instance, not how the property is to be distributed from the estate.[2] Seegenerally Ala. Code 1975, § *Page 558 6-6-540; cf. Grass v. Ward, 451 So.2d 803
(Ala. 1984) (determining title to property as between a grantee to whom the property was conveyed by a decedent's predecessor in interest and the decedent's husband, who claimed a life estate under the curtesy statute).
The sole issue raised in this appeal is not whether James may claim some partial interest in the parcels as one of several heirs of Mary Hill, but instead is whether James alone is the rightful owner of the parcels pursuant to an implied contract directly between James and Sunco. James takes the position that Sunco should not have conveyed the parcels either to Mary's estate (from which James and the other heirs may have been entitled to their respective distributions of undivided interests in the parcels), or directly to all of the heirs, but instead should have conveyed the parcels directly and exclusively to him based on an implied contract he allegedly had with Sunco.
The trial court did not find that an implied contract existed between James and Sunco; instead it held that James was entitled to receive the entire fee-simple title to the parcels pursuant to the express, writtencontracts between the Hills and Sunco. Because we will affirm a trial court "`on any valid legal ground,'" see Smith v. Equifax Servs., Inc.,537 So.2d 463, 465 (Ala. 1988) (quoting Tucker v. Nichols, 431 So.2d 1263,1265 (Ala. 1983)), we will discuss both the express-contract rationale relied upon by the trial court and the implied-contract theory argued by James.
We first examine the express-contract rationale relied upon in the trial court's judgment. The appellants argue that the trial court's determination — that the "intent of the sellers in the contract was to convey the property to the plaintiff and his wife" — is not supported by the evidence. The contracts at issue originally did provide for the conveyance of the parcels at issue to James and Mary. A few days before Mary's death, however, James assigned all of his interest in those contracts to Mary. The sellers' assignee, Sunco, was a party to that assignment. Under the resulting written contract, the unambiguously expressed intent of the parties was that title to the parcels would be conveyed solely to Mary. The trial court's contrary interpretation of the parties' contracts, and its judgment quieting title solely in James rather than in all of the heirs of Mary Hill, finds no support within the four corners of the instruments forming that contract.
 "It is well settled under Alabama law that the words of a contract are to be given their ordinary meaning and that the intention of the parties is to be derived, if possible, from the provisions of the contract itself. Where a contract, by its terms, is plain and free from ambiguity, there is no room for construction and the contract must be enforced as written."
BoWing Office Sys., Inc. v. Johnson, 744 So.2d 915, 918 (Ala.Civ.App. 1999) (citations omitted). See also Mobile Eye Ctr., P.C. v. Van BurenP'ship, 826 So.2d 135, 138 (Ala. 2002) (applying a de novo standard of review to a trial court's determination of whether a contract is ambiguous and to a trial court's determination of the legal effect of an unambiguous contract).
We turn next to James's argument that we should uphold the judgment of the trial court on the alternative ground that *Page 559 
James obtained title to the parcels pursuant to an implied contract between him and Sunco. As noted, however, the trial court made no factual finding that James obtained title through an implied contract. To the contrary, the trial court's judgment is based on an express contract, to the apparent exclusion of an implied contract. While it is true that this court will affirm the judgment appealed from if supported on any valid legal
ground, the evidence in this case falls well short of what would be required for this court to hold, as a matter of law, that James is entitled to the parcels pursuant to an implied-contract theory. This is so for two reasons.
First, there is insufficient evidence of an implied contract. The only witnesses at trial were a representative of Sunco and Gartman; James did not testify. The representative from Sunco made no mention in her testimony of a new agreement with James after Mary's death. Gartman testified that James "tried to get [the siblings] to sign papers and sign our rights" over to him. As noted above, Gartman testified that she and the other siblings rejected this proposal, while permitting James to continue residing on the parcels following his wife's death. She testified that she and the other siblings considered the payments he was making to Sunco to be rent on the parcels.
Second, we cannot conclude, as a matter of law, based on the evidence presented, that James's possession of the parcels was referable exclusively to the alleged implied contract. To the extent James's possession of the parcels began before Mary's death,[3] James was placed, or at least maintained, in that possession by Mary pursuant to her contractual right of possession under her contracts with Sunco. At Mary's death, either her estate or her heirs assumed the contractual right to possession of the parcels, see note 2, supra, a fact that conflicts with James's assertion that he was put in possession of the parcels by Sunco following Mary's death. Further, as previously noted, Gartman testified that she and the other heirs acquiesced in James's possession of the parcels following their mother's death and that they viewed his payment of the installments due under the contracts with Sunco as consideration to them in the nature of rent for his exclusive possession of the parcels.
"`To withdraw an oral contract from the Statute [of Frauds], one must pay some or all of the purchase price and be put in possession of the land by the seller.'" Durham v. Harbin, 530 So.2d 208, 212 (Ala. 1988) (quoting Darby v. Johnson, 477 So.2d 322, 326 (Ala. 1985)). The possession of the land by the "buyer" under an implied-contract theory must be referable exclusively to the implied contract. Davis v.Barnfield, 833 So.2d 58 (Ala.Civ.App. 2002); see also Dixieland FoodStores, Inc. v. Geddert, 505 So.2d 371 (Ala. 1987). The evidence in the record before us does not enable us to make such a holding as a matter of law. James's claim to the parcels therefore does not fall outside the Statute of Frauds.
In light of the foregoing, the trial court's judgment is due to be reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, J., concur. *Page 560 
THOMPSON, J., concurs in the result.
PITTMAN, J., recuses himself.
[1] All of the heirs, other than James, were named as defendants in this action to quiet title to the parcels.
[2] We recognize that title to real property passes to a decedent's heirs immediately upon death, see Ala. Code 1975, § 43-2-830(a), and that, under appropriate circumstances, when a prospective vendee under a contract for the purchase of real property dies before the contract is fully executed, the contractual rights of the prospective vendee are, themselves, treated as real property under the doctrine of "equitable conversion." See, e.g., Grass v. Ward, 451 So.2d 803 (Ala. 1984); McGuirev. Andre, 259 Ala. 109, 65 So.2d 185 (Ala. 1953). Whether the contract presented in this case is of such a nature that it could support an equitable-conversion claim was not an issue raised in the trial court and is not at issue in this appeal.
[3] It is unclear from the record when James's possession of the parcels began and the extent to which James possessed the parcels to the exclusion of the rights of the other heirs of Mary Hill.