In re Charles KIGGINS, Debtor.

Diane L. KIGGINS, Plaintiffs,

v.

Charles William KIGGINS, Defendant.

Bankruptcy No. 82–0487.
(Bankruptcy No. 81–02769).

United States Bankruptcy Court,
N.D. Ohio, W.D.

Jan. 12, 1983.

Mervin S. Sharfman, Toledo, Ohio, for plaintiffs.

Joseph N. Perlman, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came before the Court upon the Complaint to Determine Dischargeability of Debt filed by Diane Kiggins, former wife of the Debtor. Trial was held with evidence admitted and testimony taken. The issue before the Court is whether or not a debt was owed by the Debtor to Diane Kiggins, and if it was, then whether or not this debt is dischargeable.

### FACT

The Court finds the following facts:

1.) The Debtor and Diane Kiggins, during their marriage, purchased a parcel of real estate described as follows:

"Lot Number Eighty-five (85) in POINT PLEASANT COVE, a Subdivision in Washington Township, Lucas County, Ohio."

2.) The Debtor and Diane Kiggins commenced divorce proceedings during the latter part of 1980. The final Judgment Entry of Divorce was entered June 2, 1981.

3.) During the pendency of the divorce, several meetings were held between the parties concerning the disposition of the assets, including the real estate.

4.) Pursuant to the terms of the divorce, the parties were to divide the net proceeds of the sale of this real estate. Diane Kiggins was to receive sixty-five percent (65%), and Charles Kiggins was to receive thirty-five percent (35%). (See Plaintiff's Trial Exhibit I).

5.) The parties sold the real estate by land contract to Dale and Kathleen Yarberry on August 11, 1982.

6.) As part of the land contract, Debtor, Charles Kiggins, and Diane Kiggins represented that the mortgage to the United Savings & Loan Association, dated May 1, 1978, incumbering the aforesaid real property, was in good standing and had a principal balance due not in excess of Forty-two Thousand Dollars ($42,000.00).

7.) At the closing, the parties set aside the sum of Forty-two Thousand Dollars ($42,000.00) to pay off the mortgagee, United Savings & Loan Association.

8.) As a result of the sale, the Debtor, Charles Kiggins, and Diane Kiggins received the approximate sums of Nine Thousand Two Hundred Nineteen and 86/100 Dollars ($9,219.86) and Seventeen Thousand One Hundred Twenty-two and 61/100 Dollars ($17,122.61), respectively for a total sum of Twenty-six Thousand Three Hundred Forty-two and 47/100 Dollars ($26,342.47).

9.) It was subsequently discovered that instead of a mortgage balance of Forty-two Thousand Dollars ($42,000.00) owed to United Savings & Loan Association, the actual principal balance due was Forty-six Thousand Six Hundred Ninety and 15/100 Dollars ($46,690.15). It was further discovered that the mortgage loan was in default for failure to make monthly mortgage payments of an approximate total of One Thousand Three Hundred Fifty Six and no/Dollars ($1,356.00), plus any late charges assessed.

10.) Upon the discovery of the underpayment to United Savings & Loan Association, and the overpayment to Charles and Diane Kiggins, an agreement of repayment was drafted and sent to both Charles and Diane Kiggins. Diane Kiggins executed the agreement and paid the entire amount due and owing. Charles Kiggins refused to execute the agreement, and has not repaid any amount or reimbursed Diane Kiggins for any amount she tendered.

11.) The parties both allege that the other was or should have been aware of the mistake and is therefore liable. Diane Kiggins alleges that Charles Kiggins should be responsible for thirty-five percent (35%) of the amount repaid, and that the debt should be nondischargeable. Charles Kiggins believes the debt is dischargeable because of Diane Kiggins' knowledge of the mistake and her failure to reveal such mistake.

### LAW

The preliminary question to be addressed is whether or not the debt is owed by the Debtor by virtue of the allegation that Diane Kiggins had knowledge of the mistake and failed to reveal such mistake.

This Court believes that both parties should have been equally aware of the mistake. It is clear that Diane Kiggins should have been aware because she had continuous possession of the mortgage payment book. In fact she had the mortgage payment book with her at the closing. Her testimony was that she did not, however, look at the book at closing, and did not know that the existing balance was different from what was represented at the closing. Certainly enough evidence was presented to establish that Charles Kiggins also knew or should have known the approximate mortgage balance. Plaintiff's Trial Exhibit F, a Pre-Trial Financial Form, was submitted by Charles Kiggins to the Domestic Relations Court as an approximate summary of his assets and liabilities; the approximate mortgage balance listed was Forty-five Thousand and no/100 Dollars ($45,000.00). This form was signed and dated December 30, 1980, only eight months before the closing.

Charles Kiggins was aware at least by June 2, 1981, that the United Savings & Loan Association was owed past due mortgage payments for the months of February, March and April of 1981. (See Section 10c of Judgment Entry of Divorce, Plaintiff's Trial Exhibit I). It is disputed whether or not he knew of the arrearage by March 18, 1981, by virtue of a hearing in Domestic Relations Court on Diane Kiggins' Motion for temporary custody, alimony and child support. (See Plaintiff's Trial Exhibit J). It appears unreasonable for Charles Kiggins to believe that the principal balance had decreased by more than Three Thousand and no/100 Dollars ($3,000.00) in eight (8) months time, considering the fact that three (3) monthly mortgage payments had not been made in the interim. Therefore, this Court believes there was a mutual mistake of fact concerning the mortgage balance. One party was not more knowledge-

able than the other. This Court does then believe each was responsible for a share of the repayment. The question now to be resolved is whether or not the debt owed by Charles Kiggins to Diane Kiggins is a non-dischargeable debt under 11 U.S.C. Section 523(a)(5)(B).

Section 523 states in pertinent part the following:

"*Section 523. Exceptions To Discharge.* (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

...(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

...(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support...."

A determination must be made whether the debt is in the nature of alimony, maintenance or support.

Case law has changed with the inception of the Bankruptcy Reform Act of 1978. Under the old Bankruptcy Act the case law was clear, as the Court stated in *In re Waller,* 494 F.2d 447 (6th Cir.1974), "the law of Ohio must be resorted to in order to determine what constitutes alimony, maintenance and support...." However, with the enactment of the Bankruptcy Code, this issue has been clouded by the legislative history of Section 523 which in pertinent part states the following:

"What constitutes alimony, maintenance, and support, will be determined under the bankruptcy laws, not State law. Thus cases such as *In re Waller,* 494 F.2d 447 (6th Cir.1974) ... are overruled, and the result in cases such as *Fife v. Fife,* 1 Utah 2d 281, 265 P.2d 642 (1952) is followed."

The thrust of the Bankruptcy Code is directed at rehabilitating the Debtor and allowing him a fresh start, which is the same as it was under the Act. However, the new Bankruptcy Code has made several changes in the law of dischargeability. What was once nondischargeable may now be determined dischargeable. For further discussion of the change in law regarding the alimony issue, see *In re Pelikant,* 5 B.R. 404 (Bkrtcy.N.D.Ill.1980); *In re Warner,* 5 B.R. 434 (Bkrtcy.C.D.Utah 1980); *In re French,* 9 B.R. 464 (Bkrtcy.S.D.Cal.1981).

■ The Bankruptcy Court is not required to accept as determinative those statements in the divorce or a similar decree that particular debts are in the nature of alimony or property settlement. Rather, the Court will look at the substance of the decree to see if the obligations were indeed necessary for the support and maintenance of the spouse and children. Characterization of a debt in a bankruptcy proceeding is a federal question which is governed by federal law and policy. *In re Warner,* supra. Each case, therefore, must be decided upon its own merits after a review of the respective facts and surrounding circumstances.

■ If the debts are unassociated with the support and maintenance of the spouse and children they do not come within the intent of the statute and hence are dischargeable. It is clear that if Diane Kiggins and the children were living in the home in question, any money associated with it would be characterized as support. However, the residence was to be sold and the proceeds dispursed to the parties. Although this case is not as clear, this Court believes that the characterization of support must be extended to these proceeds. The proceeds were necessary in assisting Diane Kiggins in providing a new home for the children. In addition, no periodic alimony payment was granted to Diane Kiggins. As this Court stated in *In re Brace,* 13 B.R. 551 (Bkrtcy.N.D.Ohio 1981), it is not the purpose of the Code or this Court to relieve the debtor to such an extent that he may neglect his duties to his ex-spouse and children. This Court believes the intent of the statute clearly encompasses this factual situation, and as such the debt shall be held nondischargeable.

It is therefore

ORDERED, ADJUDGED and DECREED that the debt to Diane Kiggins is in the form of support and thereby is found to be nondischargeable.

In so reaching these conclusions, the Court has considered all the evidence presented, whether or not referred to specifically in the Opinion above.

It is FURTHER ORDERED that service of this Order shall be made by the Deputy Clerk of this Court mailing copies of same to all parties in interest and counsel of record in the above adversary proceeding.