**In re Jerry & Glendora SMOTHERMAN,
Debtors.**

**Anna A. SMOTHERMAN, Plaintiff,**

**v.**

**Jerry Donald SMOTHERMAN,
Defendant.**

**Bankruptcy No. 82–1173.
Related Case: 82–02334.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 18, 1983.

Dominic M. Bruno, Toledo, Ohio, for plaintiff.

Jerry P. Purcel, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came before the Court as an adversarial proceeding to determine the dischargeability of certain debts belonging to the Debtor. The parties have agreed to have the Court decide the issues in this case based upon the pleadings, briefs, and exhibits submitted on behalf of the respective parties.

### FACTS

A review of the case find that the following facts are not in dispute:

1.) The Plaintiff and the Defendant were married on January 20, 1968. Two children were born in that marriage. On August 20, 1981, the parties entered into a separation agreement which contained the language: ARTICLE IV: Husband is to pay all outstanding obligations of the marriage not otherwise specifically mentioned.

| 1. | Note and Mortgage, Toledo Trust Company secured by 4741 Elmhurst | $30,000.00 |
|----|----|----|
| 2. | Note and Mortgage, People's Savings Association, secured by 1152 Buckingham | 11,300.00 |
| 3. | Note and Mortgage, People's Savings Association, secured by 1762 Bigelow | 16,500.00 |
| 4. | Note, DuPont Credit Union, secured by 1980 American Motors Eagle | 5,000.00 |
| 5. | Ohio Citizens Bank, check loan | 300.00 |
| 6. | Ohio Citizens Bank, VISA | 1,100.00 |
| 7. | Ohio Citizens Bank, note for pool | 3,745.00 |
| 8. | Dr. Multani | 200.00 |
| 9. | Dr. McKail | 50.00 |
| 10. | Sears | 100.00 |

The separation agreement was incorporated in a decree of dissolution which was rendered on October 26, 1981.

2.) On May 29, 1980, the parties' daughter, Lori, was diagnosed as suffering from a "slight lumbar scoliosis", a condition that can be treated with physical therapy and exercise.

3.) On September 16, 1980, the parties entered into a contract for the purchase of a swimming pool. The promissory note used in the purchase was assigned to Ohio Citizens Bank and is one of the debts listed on Exhibit A of the separation agreement. This is one of the debts for which the Husband-Debtor is responsible.

4.) The Plaintiff-Wife and the two minor children currently reside in the residence at 4741 Elmhurst Road. Toledo Trust holds the first mortgage against that property for the approximate debt of Thirty Thousand and no/100 ($30,000.00). The separation agreement specifies that the Husband shall convey all interest in that property to the Wife, and shall continue to make payments on that debt. Peoples Savings Association holds the first mortgage on the properties at 1152 Beckingham and 1762 Bigelow. The separation agreement specifies that the Wife is to receive the titles to these properties and the monies generated by renting them. She shall be responsible for the outstanding debts owed to this mortgagee.

5.) The outstanding debts owed to Dr. McKail and Dr. Multani were apparently incurred for the treatment of the couple's children.

6.) Currently, the Plaintiff has an annual income of approximately Six Thousand and no/100 Dollars ($6,000.00), and the Plaintiff approximately Twenty-six Thousand and no/100 Dollars ($26,000.00).

7.) The rights to possession and ownership of the 1980 American Motors Eagle are reserved to the Wife by express terms within the Separation Agreement. This automobile secures a debt owed to the DuPont Credit Union. According to the terms of the agreement, this car is used by the Wife in her part-time employment as a real estate salesman, and shall be paid for by the Defendant.

8.) The Debtor-Husband filed a Chapter 13 proceeding on November 3, 1982.

### LAW

The questions raised by this proceeding are whether or not these debts are dischargeable by the Debtor in a bankruptcy proceeding. Specifically, the question is whether or not these debts constitute alimony, maintenance or support within the meaning of the Bankruptcy Code.

11 U.S.C. Section 523 states, in pertinent part:

"(a) A discharge under sections ... 1328(b) of this title does not discharge an individual debtor from any debt...

(5) to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of both spouse and child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that ... (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony maintenance, or support..."

The intent of this section requires the Court to examine the nature of the debt sought to be discharged and to determine whether or not the obligation placed on the Debtor by the Separation Agreement is for the upkeep of his former family. *Matter of Jensen,* 17 B.R. 537 (Bkrtcy.Mo.1982).

The Bankruptcy Court is not required to accept as determinative those statements in the divorce decree that particular debts are in the nature of alimony or property settlement. Rather, the Court must look beyond the four corners of the decree and determine whether under the circumstances surrounding a debt, the debt is actually for the support of the prior family or the resolution of property rights. *In re Hoover,* 14 B.R. 592 (Bkrtcy.N.D.Ohio 1981). If the debts are unassociated with the support and maintenance of the spouse and children they do not come within the intent of Section 523 and thus are dischargeable. *In re Brace,* 13 B.R. 551 (Bkrtcy. N.D.Ohio 1981).

A review of the facts finds that the Plaintiff-Wife and the children currently reside at 4741 Elmhurst Road. The provision of a place in which to live falls easily within what the Bankruptcy Code intends

as maintenance and support of a debtor's family. Where a debtor's obligation under a divorce decree is to make mortgage payments that are necessary for his former wife's security and support, such a debt will not be dischargeable. *In re Ferradino,* 14 B.R. 196 (Bkrtcy.Nev.1981). Therefore, a requirement calling for the Debtor to be obligated to pay for such a place would not be dischargeable in bankruptcy pursuant to 11 U.S.C. Section 523(a)(5).

■ Similarly, medical treatment which is required in order to preserve the health of the debtor's family falls within contemplation of Section 525(a)(5). *See, In re Brace,* supra; *In re Bradley,* 17 B.R. 107 (Bkrtcy.Tenn.1981). The complaint alleges that these debts are owed to the respective physicians for treatment of the Debtor's son. Since there is nothing which contradicts these allegations, the debts must be held nondischargeable.

■ The facts also show that the 1980 automobile, constitutes the Plaintiff's only means of transportation. This means use for grocery shopping, school, recreation, medical emergencies, and so forth. It is also used in her employment as a real estate salesman to transport prospective buyers from place to place. Accordingly, she is required to have a car that is in good repair. Her employment generates a modest income that augments what is paid by the Defendant in alimony and child support. Without this supplemental income it appears that the Plaintiff would not be able to maintain herself and her two children on what is paid pursuant to the separation agreement. Therefore, the Defendant's provision of a motor vehicle enhances the Plaintiff's ability to care for herself and the children. Again, such a debt would fall within the scope of what the Code intends as support and maintenance of family and would be nondischargeable.

■ However, the debts to Ohio Citizens Bank (VISA and check loan) and the debt to Sears are not itemized so as to reflect how and for what they were incurred. The burden is on the moving party to demonstrate facts which give rise to nondischargeable circumstances. The Plaintiff has failed to satisfy her burden of proof as to the nature of these debts. Accordingly, they must be found to be dischargeable. *Matter of Bailey,* 20 B.R. 906 (Bkrtcy.W.D. Wis.1982).

The record shows that title to the properties located at 1152 Buckingham and 1762 Bigelow will rest solely in the Plaintiff, and that she will be responsible for the debts owed on them. She is also entitled to any rentals which are generated from the ownership of these parcels. Inasmuch as the Debtor has been already relieved of these debts by virtue of the separation agreement, the issue as to the Debtor's obligations to the mortgagee of these properties is moot.

The most difficult determination to be made in this case is whether or not the debt for the swimming pool falls within the scope of Section 523. The Plaintiff suggests in her Affidavit that the swimming pool was purchased and used primarily for her daughter's therapy. This suggestion is made to support the assertion that payment on the debt is in the nature of support and maintenance because it provides a medical benefit. Diametically opposing the view, the Defendant avers in his Affidavit that the pool was built primarily for the family's recreational enjoyment. He also contends that it was built in 1979, one (1) year prior to the diagnosis of the scoliosic condition.

The "Notice of Transfer of Note and the Assignment of Security Agreement" is dated September 16, 1980, and bears the signatures of both parties acknowledging delivery of the pool on September 20, 1980. This fact supports the Plaintiff's contention as to the date of purchase. However, the record also reflects that no prescription from a physician for a swimming pool was made, and that no tax deduction was taken for the pool as a medical expense. The Plaintiff attempted to explain that a deduction was not taken "because of other deductions".

■ While these factors are not necessarily dispositive of the issue, they are indicative of the intent which the parties main-

tained when they decided to purchase a pool. As pointed out in the Defendant's Affidavit, at the time the physician prescribed therapy for Lori, he set forth only special gym classes. He did not prescribe a pool, swimming classes, or other similar treatment. At best, the records suggests that the physician may have indicated that swimming would be good therapy. This would lead to the conclusion that while the pool may have been purchased with Lori in mind, it was not purchased primarily for her use. This conclusion requires the subsequent conclusion that the debt was not incurred primarily for the maintenance and support of the Debtor's child.

In reaching this decision, the Court has considered all of the evidence presented, whether or not specifically referred to in this Opinion.

Accordingly, it is ORDERED that the following debts are found not to be dischargeable:

1) Note and Mortgage, to Toledo Trust for the property at 4741 Elmhurst Road in the amount of Thirty Thousand and no/100 Dollars ($30,000.00);

2) Note to DuPont Credit Union for the 1980 Eagle in the amount of Five Thousand and no/100 Dollars ($5,000.00);

3) Debt to Dr. Multani in the amount of Two Hundred and no/100 Dollars ($200.00); and,

4) Debt to Dr. McKail in the amount of Fifty and no/100 Dollars ($50.00).

It is FURTHER ORDERED that the following debts are found to be dischargeable:

1) Check loan to Ohio Citizens Bank in the amount of Three Hundred and no/100 Dollars ($300.00);

2) Debt to Ohio Citizens Bank for VISA in the amount of One Thousand One Hundred and no/100 Dollars ($1,100.00);

3) Note to Ohio Citizens Bank for the swimming pool in the amount Three Thousand Seven Hundred Forty-five and no/100 Dollars ($3,745.00); and,

4) Debt to Sears in the amount of One Hundred and no/100 Dollars ($100.00).