In re Louis COSTELL, Jr., Debtor(s).

Leslie COSTELL, Plaintiff,

v.

Louis COSTELL, Jr., Defendant.

Bankruptcy No. 86–0188.
Related Case: 86–01024.

United States Bankruptcy Court,
N.D. Ohio, W.D.

April 28, 1987.

Sheldon M. Slaybod, Toledo, Ohio, for plaintiff.

Phillip Browarsky, Toledo, Ohio, for defendant.

John J. Hunter, Toledo, Ohio, trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Plaintiff's Complaint to Determine Dischargeability of Certain Debts, Plaintiff's Objections to Defendant's Discharge and Exemptions. The Trustee filed a Counterclaim. A Pre-Trial was held on these matters, at which time the Court granted leave to file Motions for Summary Judgment. All parties, the Trustee, Plaintiff, and Debtor, filed Motions for Summary Judgment and Memoranda respecting the merits of those Motions. The Court has reviewed the written arguments of counsel, the affidavits and exhibits, as well as the entire record in this case. Based on that review, and for the following reasons, the Court finds that Plaintiff's Motion for Summary Judgment should be granted in part and denied in part, Defendant-Debtor's Motion for Summary Judgment should be granted in part and denied in part, and Trustee's Motion for Summary Judgment should be granted in part and denied in part.

## FACTS

Debtor, Louis Costell, and Plaintiff, Leslie Costell, were divorced in 1984. During their marriage, the parties were owners of property on Golden Road, Toledo, Ohio. The nature of the estate is somewhat unclear. Plaintiff's Memorandum states that the property was held as an estate by the entireties, while the Trustee's Memorandum refers to the property as being held "jointly". The decree of dissolution was issued on June 28, 1984. The decree directed the Debtor-Husband to convey his right, title and interest in the property, by quitclaim deed, to the Plaintiff within seven (7) days of the filing of the decree. In the event that the Debtor failed to convey the property, the decree provided that "this Agreement shall be, constitute and operate as such conveyance, and the County Auditor and County Recorder are hereby respectively authorized and directed to transfer and record same for the public record of such conveyance."

The Debtor failed to transfer and record a quitclaim deed within the specified time period, and the decree was never filed by the County Recorder or Auditor. In addition, while the decree recites that a legal description of the subject property is attached to the decree, an affidavit by the Trustee, and admissions by Plaintiff's counsel, indicate that the original legal description is, at least at this time, not attached.

On May 16, 1986, the Debtor filed a voluntary petition under 11 U.S.C. Chapter 7. On July 29, 1986, subsequent to the filing of the petition, Plaintiff, through her agent, caused a copy of the decree of dissolution to be filed in the office of the Lucas County Recorder. The Plaintiff attached a copy of the legal description of the property referred to in the Judgment Entry. On or about November 18, 1986, the Plaintiff mailed the Trustee a stipulation for signature which states that the attempted transfer, through the recording of the Judgment Entry, was "invalid and held for naught" and directing the Lucas County Recorder to invalidate the recordation. A review of the record reflects that the Trustee has not, at this time, signed the stipulation.

There are no allegations before the Court that the legal description appended is not a true and accurate description of the property which the Judgment Entry was intended to transfer.

Based on the above facts, the Trustee has filed a Counterclaim to Plaintiff's Motion to Determine Dischargeability. The Trustee seeks to have Debtor's interest in the property quieted in the Trustee through the "strong arm" powers of § 544(a). For violation of the automatic stay, the Trustee prays for attorney's fees, court costs and punitive damages in the amount of $50,000.00. The Trustee also asks for fees and costs, plus $25,000.00 punitive damages for fraud upon the Trustee, resulting from the appending of the exhibit and the recording of the decree. The Trustee has moved for Summary Judgment on all issues.

The decree of dissolution also provided that the Debtor pay the first and second mortgage on the former marital residence, in which the Plaintiff and the couple's three minor children now reside. In addition, the Debtor was directed to make repairs on the residence, to make payments on the couple's VISA account, and to pay the Plaintiff $5,690 as her interest in the Debtor's pension program. The Plaintiff has moved for Summary Judgment on all issues, including the Plaintiff's right to the residential property and the Trustee's counterclaim for damages. The Debtor has moved for Summary Judgment on all issues except those brought by the Trustee.

## LAW

### I

■ Summary Judgment is properly granted when the Movant can demonstrate that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law. *See*, Bankruptcy Rule 7056 and Fed.R.Civ.P. 56. However, Movant must be able to demonstrate all the elements of a cause of action in order to prevail. *In re Hartwig Poultry, Inc.*, 57 B.R. 549, 551 (Bankr.N.D.Ohio 1986). A Motion for Summary Judgment must be construed in the light most favorable to the party opposing the Motion. *In re Sostarich*, 53 B.R. 27 (Bankr.W.D.Ky.1985).

The Trustee seeks to use the "strong arm" provisions of 11 U.S.C. § 544(a) to quiet title to the subject real estate in the Trustee. § 544(a) states in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

In response, the Plaintiff argues that under the facts of the present case, the Judgment Entry transferred the property at the time of journalization, and did not need to be recorded to defeat the Trustee's claim under Ohio law.

■ This position appears to be contrary to the provisions of section 5301.25(a) of the Ohio Revised Code, which states:

(A) All deeds, land contracts referred to in division (B)(2) of section 317.08 of the Revised Code, and instruments of writing properly executed for the conveyance of encumbrance of lands, tenements, or hereditaments, other than as provided in section 5301.23 of the Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated, and until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or land contract or instrument.

Clearly, the Judgment Entry is, by its terms, an instrument of writing properly executed for the conveyance of land. Thus, if it is not recorded, it is fraudulent as to a subsequent bona fide purchaser

without knowledge of the Plaintiff's interest.

Plaintiff's counsel argues that the Trustee cannot be a bona fide purchaser without notice because the Trustee has stipulated that he examined the Common Pleas Court file. Nevertheless, under § 544(a), the Trustee becomes a bona fide purchaser "without regard to any knowledge of the trustee or of any creditor". However, it should be noted, this phrase does not insulate the Trustee from all notice. As stated in *McCannon v. Marston*, 679 F.2d 13, 16 n. 2, (3rd Cir.1982), such a holding would insulate the Trustee from even record notice. Coversely, if the Trustee's status as a bona fide purchaser is subject to the defense of actual notice of equitable interests, then the avoidance powers of § 544(a)(3) would be useless. The Trustee must first learn of equitable interests before acting to avoid them.

■ The case law in this area recognizes the above dilemma, and solves it by distinguishing between constructive and actual notice. Constructive notice can defeat the Trustee's status as a bona fide purchaser without "knowledge", while actual notice cannot change the Trustee's § 544(a) "strong arm" powers. *See In re Gurs*, 27 B.R. 163 (Bankr. 9th Cir.1983); *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982); *In re Fry Bros. Co.*, 52 B.R. 169 (Bankr.S.D. Ohio 1985); *In re Dlott*, 43 B.R. 789 (Bankr.D.Mass.1983); *In re Inv. Sales Diversified, Inc.*, 49 B.R. 837 (Bankr.D.Minn. 1985). The question before the Court is therefore, whether the Trustee had constructive notice of the Plaintiff's equitable interest under state law.

Before addressing the state law issue, the Court must first take a step back and define the Trustee's powers under 11 U.S.C. § 544(a)(3). In *In re Gurs, supra* at 165, the Bankruptcy Appellate Panel considered the nature of the hypothetical person in whose shoes the Trustee stands. The Panel observed that "The court should turn to state law only after defining the nature of the hypothetical person, whose powers the Trustee assumes." Under

*Gurs*, the hypothetical bona fide purchaser is defined as follows:

A person who

(1) at the instant the petition is filed purchases from the debtor;

(2) for value;

(3) in good faith;

(4) without actual knowledge of any defect or limitation in title;

(5) every interest in real property the debtor could have purported to convey without the terms of the conveyancing instrument itself evidencing irregularity;

(6) by an instrument that adheres to all formal requisites usually and regularly followed in the relevant jurisdiction (e.g. that the conveyance is in writing and acknowledged); and

(7) who as of the moment of purchase, takes all unilateral steps possible under relevant nonbankruptcy law to perfect the conveyance (e.g. recording).

This is the framework for the Trustee's § 544(a)(3) powers, which must then be applied, through state law, to determine the rights of this hypothetical bona fide purchaser in relation to the equitable interests of the Plaintiff. Again, in making this determination, it is not actual notice which is needed to defeat the Trustee's avoidance powers, rather, it is only constructive notice which can be imputed to the Trustee.

■ Under the facts of the present case, it appears that Plaintiff's possession, even if proven to be "open and notorious", cannot constitute constructive notice under Ohio law. Whether the record title is in the form of a joint tenancy, or is in the form of an estate by the entireties, Plaintiff's possession does not provide constructive notice. The Plaintiff's possession would be consistent with record title, and consequently does not give rise to a duty to inquire under Ohio law. *Williams v. Sprigg*, 6 Ohio St. 585 (1856); 72 O.Jur.3d *Notice and Notices* §§ 21, 22.

■ Constructive notice may, however, be found through number five (5) of the *Gurs* definition and Ohio law. The Trustee takes his status with "every interest in real property the debtor could have purported

to convey without the terms of the conveyancing instrument itself evidencing irregularities." *In re Gurs, supra* at 165. If, as Plaintiff's counsel has indicated, the property in question was held, at the time of the filing of the petition, by the entireties, then the Trustee received constructive notice through the irregularity of the "hypothetical deed" he theoretically received at the commencement of the case. This is because Ohio law does not permit the transfer of entireties property without the signature of both spouses. *Central National Bank v. Fitzwilliam,* 12 Ohio St.3d 51, 465 N.E.2d 408 (1984). As noted in *Gurs,* the Trustee receives every interest the *Debtor* could have purported to convey. The Debtor's former spouse would not be part of this hypothetical conveyance.

While the actual existence of an estate by the entireties was not possible at the time of the bankruptcy, one of the required "unities" having been severed by the divorce, it appears that record title may have continued to be in the form of an estate by the entireties. If the record title was in the entireties form, then the "irregularity", or inconsistency, between the Debtor's hypothetical conveyance and the record title, would be constructive notice which may be used against the Trustee under *Gurs.* Under Ohio law, a duty to inquire will arise after notice of facts which would put person of ordinary prudence on inquiry. This "inquiry notice" can effect the Trustee's § 544(a)(3) avoidance powers. *See In re Gurs,* 27 B.R. 163, 165 (Bankr. 9th Cir. 1983); *In re Inv. Sales Diversified, Inc.,* 49 B.R. 837, 844 (Bankr.D.Minn.1985).

On the state law side of this question, the duty to inquire, or "inquiry notice", operates as notice of all facts that a reasonably diligent inquiry would disclose. *McClean v. Bradley,* 282 F. 1011, *aff'd* 299 F. 379, *cert. den.* 266 U.S. 619, 45 S.Ct. 98, 169 L.Ed. 471 (D.Ohio 1922); *Kernohan v. Durham,* 48 Ohio St. 1, 8, 26 N.E. 982 (1891); 72 O.Jur.3d *Notice and Notices* § 15. It appears that a reasonably diligent inquiry would reveal the Plaintiff's equitable interest in the Debtor's half of the property. Consequently, the Trustee would not be able to claim the status of a bona fide purchaser without knowledge under § 5301.25 of the Ohio Revised Code. The failure to record would, therefore, not be fraudulent as to the Trustee, and his avoidance powers could not defeat the Plaintiffs' equitable interest in the property.

If, on the other hand, record title showed the ownership interest to be joint, or in any other form other than by the entireties, the hypothetical conveyance of the Debtor's interest would not have been in any way irregular. Thus, the Trustee would not have had constructive or inquiry notice and could avoid the Plaintiff's interest in the real estate. Consequently, as there are no affidavits before the Court relative to the state of title at the time of the filing of the bankruptcy petition, there is a question of material fact precluding Summary Judgment.

Plaintiff's other arguments for Summary Judgment on this matter are not persuasive. Plaintiff's counsel asserts that the failure to record the Judgment Entry was the fault of Lucas County and the State of Ohio because the Recorder and Auditor did not follow the Common Pleas Court's Order and record the decree of dissolution. The Plaintiff further states that "the mists of time have closed over the question" of who had the responsibility for providing the Auditor and Recorder with a copy of the decree. A fair reading of the document discloses that the responsibility was the Plaintiff's, or Plaintiff's attorney. By neglecting to file the Judgment, the Plaintiff became the holder of a "secret equity". While this case does not involve the type of fraudulent transfer which the Bankruptcy Code, and Ohio law, finds abhorrent, the law attacks the status of the holder of an unrecorded interest without the interjection of extrinsic equities.

The Bankruptcy Court is a court of equity. It is, however, a court of equity under the law. Plaintiff has directed arguments toward the unjustness of the result should the Trustee prevail. These arguments must wither in the face of the plain requirements of the recording statutes. The

State of Ohio made a policy decision in enacting these requirements. It is not the function of this Court to second guess such a universally accepted facet of property law.

While the Court's reasoning regarding the Trustee's avoidance powers may seem unduly convoluted, such may be necessary when reconciling state and federal law in this area. The powers of a Trustee to avoid "secret liens" is an important and necessary part of the Bankruptcy Code. Nonetheless important are the state law protections, developed over the centuries, for equitable interests in real property. The Trustee's avoidance powers, which are based on a hypothetical status, have to be applied to state law concepts, like constructive and inquiry notice, which impute notice to protect certain equitable interests. While there does not appear to be a change in the justness of the parties position based on the form in which the property was held, such is this Court's analysis of the requirements of the law.

## II

The Court must next consider the Trustee's Motion for Summary Judgment, and the Plaintiff's Motion for Summary Judgment against the Trustee, on the issue of attorneys fees, court costs and punitive damages. The Trustee's counterclaim is based on the Plaintiff's violation of 11 U.S.C. § 362, the automatic stay provision of the Bankruptcy Code.

The provisions of 11 U.S.C. § 541 state that the property of the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. Regardless of the Trustee's success or failure in avoiding the Plaintiff's equitable interest in the property, legal title was in the Debtor at the time the petition was filed. Thus, legal title became part of the Debtor's estate, and was subject to the automatic stay. In recording the decree, the Plaintiff, or Plaintiff's attorney, violated the automatic stay by attempting to transfer legal title to the Plaintiff. Even if the Plaintiff is successful in retaining her equitable interest, the law requires that the Court grant relief from stay prior to the recordation transferring legal title to the Plaintiff.

Under 11 U.S.C. § 362(h), the Trustee can recover costs and attorney's fees and, in appropriate circumstances, punitive damages. The prerequisite for recovery is that the violation of the stay was "willful". In the present case, the record reflects that the Plaintiff is listed as a creditor on the Debtor's schedules, and that she had thereby received notice of the filing of the petition. Plaintiff's counsel does not appear to deny these facts in opposing the Trustee's Motion for Summary Judgment on the counterclaim for violation of the stay.

Plaintiff's counsel does assert that the facts in this case do not rise to the level of bad faith, and that the Trustee should, therefore, collect nothing. This Court will award punitive damages for violation of § 362 only under extraordinary circumstances. The facts of this case do not appear to warrant any award of punitive damages, even when viewing the facts in a light most favorable to the Trustee. It does appear, however, that the Trustee is entitled to reasonable attorney's fees and costs for his efforts to recover property transferred in violation of the automatic stay. The Court finds that such fees and expenses should be awarded from the time of the recording of the decree on July 29, 1986, through the date that Plaintiff's counsel mailed the offered stipulation, November 18, 1986. The award of fees and costs will be a reasonable amount, to be set by the Court after appropriate documentation of actual time spent and costs incurred by the Trustee in his efforts to recover the property. All other fees and costs sought by the Trustee from the Plaintiff should be denied.

## III

The Plaintiff moved for Summary Judgment against the Debtor on Plaintiff's Complaint to Determine Dischargeability. The Debtor has moved for Summary Judgment against the Plaintiff on the same issues. The issues that follow primarily

concern the nature of debts arising from the decree of dissolution.

■ The dischargeability of these debts is governed by 11 U.S.C. § 523(a)(5), which states in pertinent part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support ...

Under these provisions, any obligation for alimony, maintenance, or support is not dischargeable. In making the determination as to the character of such obligations, the Bankruptcy Court is not bound by the language of the divorce decree designating certain obligations as alimony, maintenance and support. *In re Conrad*, 33 B.R. 601 (Bankr.N.D.Ohio 1983).

In the *Calhoun* decision, the Sixth Circuit Court of Appeals established the guidelines for analyzing the nature of divorce obligations under § 523(a)(5). *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). The "Calhoun test" has been summarized as follows:

(a) whether the *intent* of the state court or the parties was to create a support obligation;

(b) whether the support provision has the actual *effect* of providing necessary support;

(c) whether the amount of support is so excessive as to be *unreasonable* under traditional concepts of support; and

(d) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law.

*In re Singer*, 787 F.2d 1033, 1036 (6th Cir.1986) (Guy, J., concurring).

The Debtor claims that his obligation to pay the first and second mortgages on the former marital residence is in the nature of a property settlement, and is therefore dischargeable. The separation agreement, made an Order of the divorce court by the decree of dissolution, provides that the Plaintiff shall reside in the marital premises and that the couple's three minor children shall live with the Plaintiff.

It has long been the position of this Court that a significant part of the duty owed by divorced debtor's to their former families is the provision of an adequate place to live. *In re Conrad*, 33 B.R. 601, 603 (Bankr.N.D.Ohio 1983); *In re Kiggins*, 26 B.R. 821, 824 (Bankr.N.D.Ohio 1983); *In re Smotherman*, 30 B.R. 568, 571 (Bankr. N.D.Ohio 1983). This duty is especially strong when there are minor children living in the residence in question.

■ In applying the *Calhoun* test to the case at bar, the Court must first examine whether the state court, or the parties, intended to create an obligation to provide alimony or support through the mortgage payments. *Calhoun, supra* at 1109. A review of the record reflects that both the first and second mortgages were listed in the separation agreement under "Alimony". While the Court is not required to accept as determinative those statements within a divorce decree which establish particular obligations as alimony or property settlement, the characterization is entitled to some weight as evidence of the intent of the parties and the intent of the court in adopting the separation agreement. This Court also notes that the presence of minor children is a factor considered, under Ohio law, by the Domestic Relations Courts in setting alimony, and of course, child support. From these facts, it appears that both mortgages were intended as alimony, and as support for the former couple's minor children.

It also appears that the payment of the mortgages has the effect of providing the support necessary to ensure that the daily needs of the former spouse and the Debtor's children, are satisfied. *Calhoun, su-*

*pra* at 1109. The Plaintiff is responsible for taxes, utilities, and insurance on the real estate. The Debtor's obligation to pay the mortgage seems to provide assistance to the Plaintiff in keeping and maintaining the residence.

Finally, the Debtor's obligation to pay the mortgages is not so excessive as to be unreasonable under traditional concepts of support. *Calhoun, supra* at 1110. The Debtor's petition reflects that the Debtor made $41,843.00 in 1985. Although the Debtor was laid off at the time of the filing of the petition, there is no evidence that the Debtor is physically disabled, or in any other way unable to seek other employment if necessary. Considering the Debtor's past earning capacity, the size of the mortgage payments, and the necessity of providing a home for the Debtor's children, the mortgage payments do not appear to be excessive.

■ For the above reasons, primarily that the Plaintiff and the children are living in the house in question, the mortgage payments are found to be nondischargeable. It should be noted, the issue of the nondischargeability of the obligation to transfer the Debtor's interest in the real estate is not before the Court.

■ The Plaintiff also seeks to have the Debtor's obligation to make certain repairs to the house found to be nondischargeable on Summary Judgment. Although the nature of the repairs does not appear to be cosmetic, the Court must have more evidence as to the necessity, or lack of necessity, for each of the repairs listed in the separation agreement. *In re Shimp*, 59 B.R. 553, 555 (Bankr.N.D.Ohio 1986); *In re Conrad*, 33 B.R. 601, 604 (Bankr.N.D.Ohio 1983) (no necessity for a motorcycle). If the repairs are not necessary for the safety and well being of the Plaintiff and the children, then the obligation is dischargeable.

The question of the dischargeability of the repairs is also dependent on the outcome of the Trustee's counterclaim to avoid the Plaintiff's equitable interest arising from the decree of dissolution. If the property is to be sold, and the proceeds split with the Trustee, then the obligation to repair the house would be dischargeable. This is in contrast to the mortgage related obligations, which would be necessary to provide for the Plaintiff's continuing need for housing for herself and the children. Therefore, there being issues of material fact still in question, the Motions for Summary Judgment should be denied.

The Court faces somewhat the same problem regarding the dischargeability of the credit card debts. The separation agreement states: "Neither Husband nor Wife may hereafter incur any debt or obligations upon the credit of the other and each shall indemnify, defend and save the other absolutely harmless from any debt or obligation so charged or otherwise incurred." Under the heading "Debts", the Husband-Debtor is made responsible for the payment of the Seven Hundred Dollars ($700.00) owed to Visa at the time of the separation agreement.

■ The Plaintiff alleges that the Debtor is seeking to discharge a series of bills incurred in his name, and charged on a joint account at Visa, for personal bills for himself and his girlfriend, after the divorce. First, it must be noted that the claim appears to be more properly brought under a theory based on the extension of credit being fraudulently obtained. As a Complaint based on nondischargeability under 11 U.S.C. § 523(a)(5), the Plaintiff must show the necessity of each of the expenditures for the "support" of herself and her three children. *In re Kiggins*, 26 B.R. 821, 824 (Bankr.N.D.Ohio 1983). However, Plaintiff's Memorandum states that the charges were for the husband's and his girlfriend's personal bills. Even if the Plaintiff were to prove that the charges were used in this manner, it would not make the obligation nondischargeable under § 523(a)(5). The charges were not intended as alimony, maintenance and support, and did not have the effect of providing alimony, maintenance and support. Therefore, there being no genuine issue of material fact, Summary Judgment should be granted to the Debtor.

Finally, the parties have moved for Summary Judgment as to the dischargeability of the obligation to pay the Plaintiff Five Thousand Six Hundred and Ninety dollars ($5,690.00) for her interest in the Debtor's pension. The record appears to lack the evidence necessary for the Court to grant Summary Judgment on this issue. Therefore, both Motions for Summary Judgment should be denied.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Trustee's Motion for Summary Judgment be, and is hereby GRANTED IN PART and DENIED IN PART.

It is FURTHER ORDERED that the Plaintiff's Motion for Summary Judgment be, and is hereby, GRANTED IN PART and DENIED IN PART.

It is FURTHER ORDERED that the Debtor's Motion for Summary Judgment be, and is hereby, GRANTED IN PART and DENIED IN PART.

It is FURTHER ORDERED that the Trustee's counterclaim for attorney's fees and costs is GRANTED for the period from July 29, 1986 through November 18, 1986. The award of attorney's fees and costs to be a reasonable amount to be set by the Court after appropriate documentation of actual time spent and costs incurred in efforts to recover the property.

It is FURTHER ORDERED that Plaintiff's Motion for Summary Judgment against the Trustee's counterclaim is GRANTED as to punitive damages and all fees and costs incurred before July 29, 1986 and after November 18, 1986.

It is FURTHER ORDERED that the Debtor's obligation to pay the first and second mortgage be, and is hereby, NON-DISCHARGEABLE.

It is FURTHER ORDERED that the Debtor's obligation to pay certain Visa bills, listed in Plaintiff's Complaint, be, and is hereby DISCHARGEABLE.

It is FURTHER ORDERED that all other Motions for Summary Judgment on issues before the Court in this case, be, and are hereby, DENIED.

It is FURTHER ORDERED that a Pre-Trial Conference in this case be, and is hereby, set for Wednesday, May 27, 1987 at 2:30 o'clock P.M., in Courtroom No. 2, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.