In re Dennis Byron MARCHMAN,
Debtor.

Kenneth R. Jones, Trustee, Plaintiff,

v.

Dennis Byron Marchman, Debra Bragg
Marchman Davis, Susan B. Snider,
Hilda B. Jackson, Marilyn B. Jinks,
Norman R. Williams, and The Estate
of Edna Bragg Babcock, Deceased,
Defendants.

Bankruptcy No. 99–6111–DHW.
Adversary No. 00–172–DHW.

United States Bankruptcy Court,
M.D. Alabama.

May 4, 2001.

Mac Borland, Jr., Dothan, AL, for debtor.

Collier H. Espy, Jr., Espy, Metcalf & Poston, P.C., Dothan, AL, for Debra Bragg Marchman Davis.

E. Terry Brown, Chambless, Math, Moore, Brown & Carr, P.C., Montgomery, AL, for trustee.

Charles H. McDougle, Jr., Dothan, AL, for defendants.

## MEMORANDUM OPINION

DWIGHT H. WILLIAMS, Jr., Bankruptcy Judge.

The chapter 7 trustee filed a complaint under 11 U.S.C. § 363(h) on August 21, 2000 to sell real property located at 108 Breckenridge Lane, Dothan, Alabama.

The trustee claims a one-half interest in the property. The trustee does *not* dispute that Debra Marchman Davis, former wife of the debtor, owns the other one-half interest nor that the estate of Edna Bragg Babcock holds a valid and properly perfected first mortgage on the property. Debra Marchman Davis, Susan B. Snider, Hilda B. Jackson, Marilyn B. Jinks and Norman R. Williams are co-executrices and executor of the estate of Edna Bragg Babcock.

Debra Marchman Davis disputes the trustee's interest in the property. Following a pretrial conference, Debra Marchman Davis and the trustee submitted the issue to the court on briefs and stipulated facts. The court treats the parties' submission as cross motions for summary judgment.

## JURISDICTION

The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. 157(b)(N) and (O).

## FINDINGS OF FACT

The following facts are stipulated:

1. Dennis Byron Marchman ("debtor") and Debra Marchman Davis ("Davis") jointly owned the real property located at 108 Breckenridge Lane, Dothan, Alabama which served as their marital residence.

2. The debtor and Davis were divorced on March 18, 1999 by a Judgment of Divorce entered in the Circuit Court of Houston County, Alabama.[1] The judgment of divorce provides as follows: "The Plaintiff [Davis] is awarded the full title and ownership, and use of the parties' marital home at 108 Breckenridge Lane, Dothan AL, and the Defendant [debtor] is divested of any interest in the same."

3. At the time of the divorce, the marital residence was subject to a valid and properly perfected, and recorded, first mortgage now held by the Estate of Edna Bragg Babcock. The judgment of divorce required Davis to assume and pay the outstanding mortgage.

4. The Circuit Court of Houston County entered a subsequent order[2] on October 21, 1999 which, *inter alia*, addressed the subject real property as follows:

Upon [Davis] tendering to the [debtor] the sum of $5,652.85 representing the [debtor's] salary in the business known as Floors, Doors, & More and equity in said business, land, and home, then [Davis] would be entitled to a deed from the [debtor] conveying to her all of his right, title, and interest in said home

---

1. The Judgment of Divorce is attached to the Davis brief.

2. The order is attached to the Davis brief.

located on Breckenridge Lane, Dothan, Alabama.

5. The debtor filed a petition under chapter 7 of the Bankruptcy Code on December 7, 1999 by which time Davis had not paid $5,652.85 to the debtor, and the debtor had not executed a deed conveying his one-half interest to Davis. The mortgage had an estimated balance of $100,000.00.

## CONCLUSIONS OF LAW

The chapter 7 trustee seeks authority to sell the Breckenridge Lane property under § 363(h) which provides:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of

natural or synthetic gas for heat, light, or power.

Davis contends that the trustee does not have an interest in the property to sell under 11 U.S.C. § 363(h). Davis contends that the debtor "merely held an undivided equitable interest in the marital residence subject to" the receipt of $5,652.85.[3]

The trustee claims a one-half interest in the property contending that the judgment of divorce did not effect a transfer of the debtor's interest. The trustee contends that payment of the $5,652.85 was a condition precedent to the debtor's obligation to issue a deed. Because the condition was not fulfilled, the debtor retained title to his one-half interest in the property.

The trustee relies on *Grass v. Ward*, 451 So.2d 803 (Ala.1984). In *Grass*, a husband and wife owned real property jointly. The divorce decree awarded possession of the property to the wife as long as she made the mortgage payments. The court required the husband to execute a quitclaim deed upon her satisfaction of the mortgage (on which he was liable).

The wife satisfied the mortgage, but the husband failed to execute a deed conveying his interest in the property. When years later a dispute arose over entitlement to the property, the Supreme Court held that under the doctrine of equitable conversion, equitable title transferred to the wife upon her fulfillment of the condition precedent; that is, upon her satisfaction of the mortgage.

The trustee compares *Grass* to the facts of the case at bar contending that payment of the $5,652.85 was a condition precedent to the debtor's obligation to execute a

---

**3.** Davis also argues that "the Debtor's interest should be classified only as an equitable interest to the amount of $5,652.85." This argument would be consistent with a contention that, under the doctrine of equitable conver-

sion, Davis received equitable title to the residence. However, the argument is inconsistent with argument of Davis stated in text that the debtor had equitable title to the residence.

deed.[4]  Because the condition precedent was not fulfilled, the trustee contends that equitable conversion did not occur, and the debtor retained both legal and equitable title to the property.  The court disagrees.

■ The March 1999 state court judgment of divorce unequivocally and unconditionally awards "full title and ownership" of the marital residence to Davis and divests the debtor of "any interest" in the property.[5]  This court concludes that the judgment of divorce transferred title to the debtor's one-half interest in the property to Davis.  Therefore, the debtor owned no interest in the property when he filed the chapter 7 petition.

This court construes the October 1999 state court order differently from the trustee.  The order was the result of complaints by both parties of noncompliance with the judgment of divorce.[6]  The order was in effect an accounting of the liabilities of the parties under the judgment of divorce.  The net result was that Davis owed the debtor $5,652.85.

■ The intent and purpose of the divorce court, evidenced from the proceedings and decree as a whole, must control.  *Burnett v. Roy Martin Construction, Inc.,* 847 F.2d 704, 706 (11th Cir.1988) (citing *Martin v. Magnolia Terrace,* 366 So.2d 275 (Ala.1979)).

Reading the March and October orders together, the court concludes that the state court intended for the debtor's execution of a deed to serve as a type of security for the payment of Davis' monetary obligation.  Nowhere in either of the state court orders is there any indication that the court meant for the debtor to retain any interest in the subject property or for Davis to withhold payment of the $5,652.85.

Therefore, the court finds that at the time of the filing of the bankruptcy, the debtor had no interest in the property which could become property of the estate under 11 U.S.C. § 541.  At best, the estate held bare legal title in trust for Davis under the doctrine of equitable conversion.  The trustee, of course, succeeds to that legal interest only.  11 U.S.C. § 541(d).

■ The trustee further contends the transfer of the debtor's one-half interest in the property under the judgment of divorce is avoidable by the trustee's "strong-arm" powers under 11 U.S.C. § 544(a):[7]

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the com-

---

4.  *Grass* is distinguishable from the case at bar.  In *Grass,* the wife received only possession under the divorce decree.  Her right to receive title was conditioned on her satisfaction of the mortgage.  In the case at bar, the state court awarded "full title and ownership" of the property to the wife.

5.  Bankruptcy courts must give deference to state courts in the domestic law arena.  *Carver v. Carver,* 954 F.2d 1573 (11th Cir.1992).

6.  *Debtor's Brief,* p. 1.

7.  The Davis brief does not address this issue at all.

mencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].

The issue is whether the transfer of the debtor's interest would be avoidable by a hypothetical judgment creditor or purchaser from the debtor at the time of the commencement of the case.

The trustee contends that the transfer would be avoidable under 11 U.S.C. § 544(a) because the judgment of divorce was not recorded pursuant to *Ala.Code* 35–4–90 (1975).[8]

The question arises whether the recording statute is applicable to judgments of divorce. The recording statute in Alabama is very broad and includes all conveyances of real property:

All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors.[9]

The trustee contends that the recording statute covers conveyances made by judgments of divorce.[10] The court was unable to find any authority which directly decides the issue.[11] However, the Eleventh Circuit has held that a party who had actual notice of a claim arising from an unrecorded divorce decree was not protected by the recording statute. *Burnett v. Roy Martin Construction, Inc.*, 847 F.2d 704 (11th Cir.1988). The Eleventh Circuit did not hold that the recording statute was not applicable.[12] *Id.*

Assuming the recording statute is applicable, the statute only protects "purchasers for a valuable consideration .. and judgment creditors *without notice* ..." *Ala.Code* 35–4–90(a) (1975). Although 11 U.S.C. § 544 renders any *actual knowledge* of the trustee immaterial, the trustee is charged with *constructive notice* provided by the real property records in the office of the judge of probate:[13]

The recording in the proper office of any conveyance of property or other instrument which may be legally admitted to record operates as a notice of the con-

---

**8.** The recording or nonrecording of the judgment of divorce is not a fact to which the parties have stipulated. However, the ruling of the court in this matter renders a stipulation of that fact unnecessary.

**9.** The conveyances must be recorded in the office of the judge of probate. *Ala.Code* § 35–4–50 (1975).

**10.** The trustee cites to *Garrett v. Garrett*, 628 So.2d 659 (Ala.Civ.App.1993) as authority for the proposition. However, *Garrett* does not support that proposition.

**11.** However, the ruling in this case renders a decision on that issue unnecessary.

**12.** The court notes that orders of condemnation are covered by the recording statute. *State v. Abbott*, 476 So.2d 1224 (Ala.1985). In addition, the Alabama Code requires judgments quieting title to land to be recorded. *Ala.Code* 6–6–544 (1975).

**13.** *Anderson v. Conine (In re Robertson)*, 203 F.3d 855, 864 (5th Cir.2000).

tents of such conveyance or instrument without any acknowledgment or probate thereof as required by law.

*Ala.Code* § 35–4–63. In other words, "the proper recordation of an instrument constitutes 'conclusive notice to all the world of everything that appears from the face' of the instrument." *Lott v. Tarver,* 741 So.2d 394, 398 (Ala.1999) (quoting *Christopher v. Shockley,* 199 Ala. 681, 682, 75 So. 158, 158 (1917)). Therefore, purchasers of real estate are "presumed to have examined the title records and knowledge of the contents of those records is imputed [to them]." *Tarver,* 741 So.2d at 398 (quoting *Walker v. Wilson,* 469 So.2d 580, 582 (Ala. 1985)).

Indeed, "whatever is sufficient to put one on inquiry as to the titleholder is enough to charge him with notice. Means of knowledge may be equivalent to knowledge. Whatever is sufficient to put one on guard, and call for inquiry, is notice of everything to which inquiry would lead." *First Alabama Bank of Huntsville v. Key,* 394 So.2d 67, 68 (Ala.Civ.App.1981).

The Fifth Circuit recently examined the issue of constructive notice in a case with facts very similar to the case at bar. *Anderson v. Conine (In re Robertson)* 203 F.3d 855 (5th Cir.2000).[14] In that case, the husband and wife owned the marital residence as community property. One month following their divorce, they entered into a "voluntary partition" in the form of a consent judgment. The consent judgment awarded the marital residence to the wife. The consent judgment was not recorded. The husband filed a petition under chapter 7, and the trustee filed a complaint under 11 U.S.C. § 363(h) to sell the residence as property of the estate.

A Louisiana statute prohibited the transfer of former community real property (until partitioned) without the concurrence of both spouses. The Fifth Circuit held that a hypothetical purchaser from the husband at the time of the commencement of the case would be charged with constructive notice from the real property records that the residence was former community property. Therefore, no hypothetical purchaser from the husband alone could achieve bona fide purchaser status.[15] The trustee could not avoid the transfer under 11 U.S.C. § 544(a). *See Costell v. Costell (In re Costell),* 75 B.R. 348 (Bankr. N.D.Ohio 1987).[16]

In the instant case, the parties owned the property jointly. The briefs do not reveal whether the parties owned the property as tenants in common or as joint tenants with the right of survivorship. However, under Alabama law, a party may transfer his interest in property held under either form of ownership without the consent of the other.[17]

14. The Fifth Circuit also addressed the interrelationship between 11 U.S.C. § 544 and the state's recording statute. The court explained that trustee's power to avoid transfers under § 544 is a power created by federal law, but that the extent of trustee's rights as a bona fide purchaser of real property is a matter of state law. *Robertson,* 203 F.3d at 864.

15. The irregularity or "inconsistency, between the Debtor's hypothetical conveyance and the record title, would be constructive notice which may be used against the Trust-

ee." *Costell v. Costell,* 75 B.R. 348, 353 (Bankr.N.D.Ohio 1987).

16. Ohio law does not permit the transfer of entireties property without the signature of both spouses. The *Costell* court held that a material fact, whether the parties owned the property as tenants by the entireties, precluded entry of summary judgment under 11 U.S.C. § 544. *Costell,* 75 B.R. at 353.

17. *See Nettles v. Matthews,* 627 So.2d 870 (1993).

Nevertheless, Alabama law does contain an anti-alienation provision respecting the homestead of married persons. That provision provides:

> No mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife, which must be shown by his or her examination before an officer authorized by law to take acknowledgments of deeds, and the certificate of such officer upon, or attached to, such mortgage, deed, or other conveyance, which certificate must be substantially in the form of acknowledgment for individuals prescribed by Section 35–4–29.

*Ala.Code* § 6–10–3 (1975). "The requirement of a spouse's signature on a conveyance is intended to protect that spouse from a conveyance of the homeplace without his or her consent." *Sims v. Cox,* 611 So.2d 339, 341 (Ala.1992).[18]

In the instant case, no hypothetical purchaser from the debtor at the time of the commencement of the case could have achieved bona fide purchaser status. Although the judgment of divorce was not recorded, any purchaser would be charged with constructive notice of what was revealed in the records of the probate office. At that time, a search of the public records (in the probate court of Houston County) would have shown the record owners of 108 Breckenridge Lane as Dennis Byron Marchman and Debra Bragg Marchman. A prospective purchaser would then have had an obligation to determine the marital status of the joint owners and whether the realty constituted the homestead. An inquiry, based upon the constructive notice that was available through public records, would have led a hypothetical purchaser to actual notice of Davis' interest and Marchman's inability to convey an interest in the property.[19]

Because the trustee is charged with constructive notice, he cannot achieve the status of a bona fide purchaser or judgment creditor without notice. Therefore, the transfer of the debtor's interest to Davis under the judgment of divorce is not avoidable under 11 U.S.C. § 544(a), and the trustee has no interest in the property to sell under 11 U.S.C. § 363(h).

## CONCLUSION

For the foregoing reasons the court concludes that summary judgment should enter in favor of the defendants. A separate order consistent with this opinion will enter.

---

**18.** Temporary absence from the property will not be construed as abandonment of the homestead. *Gowens v. Goss,* 561 So.2d 519 (Ala.1990).

**19.** If the facts were as indicated by the records of the probate office, no purchase of the debtor's one-half interest would have been valid without the consent of his spouse.